OPINION
{¶ 1} Defendant, Thomas Thompson, appeals in this case from his conviction and sentence on charges of aggravated burglary, abduction, escape, and violation of a protection order. The charges against Thompson arose from the events of April 23, 2003, when Thompson was on home detention following a misdemeanor domestic violence conviction. On that day, Thompson escaped detention and went to his wife's home, where he entered through an open window. He then made his wife drive him back to his parents' house (where he had been serving the detention). On the way, Thompson hit his wife in the head once, forcing her head into the driver's side window of the vehicle.
 {¶ 2} Thompson was arrested the same day and remained in jail thereafter, throughout the course of the proceedings. Bail was set at $50,000.
 {¶ 3} The original indictment was filed on May 15, 2003, and charged Thompson only with one count of domestic violence. Thompson pled no contest to that charge on May 28, 2003. At the time, the State had already presented additional charges to the grand jury. The added charges arose from the same set of facts as the initial indictment. After the plea, the grand jury returned a second indictment on May 30, 2003, charging Thompson with domestic violence, aggravated burglary, abduction, escape, and violation of a protection order. Thompson pled not guilty to these charges.
 {¶ 4} On June 11, 2003, the trial court sentenced Thompson to eleven months at the Corrections Reception Center (CRC) on the domestic violence charge. Trial on the second indictment was then set for July 7, 2003. However, on July 2, 2003, the court sua sponte continued the trial until August 25, 2003. On August 22, 2003, Thomson filed a motion to dismiss the charges in the second indictment, based on alleged violation of his speedy trial rights. After the court overruled this motion, Thompson filed a motion to dismiss based on double jeopardy and/or collateral estoppel. This motion was also overruled, on the day of trial. On the same day, Thompson pled no contest to all charges in the second indictment, except the second domestic violence, which the State had dismissed.
 {¶ 5} By agreement, Thompson was sentenced to one year for escape, to be served consecutive to the 11 month sentence for domestic violence. He also received one year for the abduction, to be served consecutive to the escape charge. The result was that Thompson's total prison time for the crimes in both indictments was two years and eleven months.
 {¶ 6} Thompson now appeals, raising the following assignments of error:
 {¶ 7} "I. The trial court errored (sic) in finding the Defendant guilty on a no contest plea without even a mere reading of the indictment or review of the police report or any records pertaining to the case, nor did the Court inform the Defendant of his Constitutional Rights he would give up if he entered a change of plea.
 {¶ 8} "II. The trial court errored (sic) in overruling the Defendant's speedy trial motion.
 {¶ 9} "III. The trial court errored (sic) in overruling Defendant (sic) Double Jeopardy/Collateral Estoppel Motion to Dismiss.
 {¶ 10} "IV. The trial court errored (sic) in sentencing the Defendant to the maximum sentence allowed by law without any findings as to why such sentence is necessary.
 {¶ 11} "V. The trial court errored (sic) in re-sentencing the Defendant to a different sentence than that which was originally imposed."
 {¶ 12} After considering the record and applicable law, we find that the first assignment of error has merit, in part. Accordingly, the judgment will be reversed and this case will be remanded for further proceedings.
 I {¶ 13} In the first assignment of error, Thompson contends that: "[t]he trial court errored (sic) in finding the Defendant guilty on a no contest plea without even a mere reading of the indictment or review of the police report or any records pertaining to the case, nor did the Court inform the Defendant of his Constitutional Rights he would give up if he entered a change of plea." We find that this assignment of error has merit, in part.
 {¶ 14} As we noted, Thompson pled no contest to all the charges, i.e., escape, abduction, aggravated burglary, and violation of a protection order. After the plea was accepted, the State outlined the facts of the alleged crimes, but did not read the indictment. The trial court then found Thompson guilty as charged. According to Thompson, this was error because the State's facts failed to establish the elements of the charges. In particular, Thompson claims that the State's facts did not establish either the trespass element of aggravated burglary or the scienter element ("knowingly") required to prove abduction and escape. And finally, Thompson contends that the State did not specify what he did that violated the protection order.
 {¶ 15} After reviewing the record, we find that the elements of the crimes were adequately established, both in the indictment and in the State's explanation. A no contest plea is not an admission of guilt, but it is "an admission of the truth of the facts alleged in the indictment, information, or complaint * * *." Crim. R. 11(B)(2). When an indictment contains sufficient allegations to state an offense, the court must find the defendant guilty of the charged offense. State v. Bird (1998),81 Ohio St.3d 582, syllabus, citing State ex rel. Stern v.Mascio (1996), 75 Ohio St.3d 422, 425. Morever, we have previously held that "a trial court need not obtain a statement of the facts before entering a finding of guilty on a no contest plea in a felony case." State v. Mosley, Montgomery App. No. 19569, 2003-Ohio-2398, at ¶ 4. The indictments in this case correctly set forth the elements of the alleged crimes, and the facts the State read into the record established that the violations occurred. As a result, the trial court did not err in finding Thompson guilty of the charged offenses.
 {¶ 16} The second argument concerns alleged defects in the trial court's explanation of Thompson's constitutional rights. Under Crim. R. 11(C)(2), the trial court shall not accept a no contest plea without first personally addressing the defendant and doing all of the following:
 {¶ 17} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 18} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 19} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 20} In the present case, the State concedes that the trial court failed to orally advise Thompson of his right to confront his accusers. However, the State argues that Thompson was aware of this right because the form he signed included a statement indicating that a no contest plea would waive the right to confront accusers. We disagree.
 {¶ 21} Trial courts must strictly comply with Crim. R. 11(C)(2) when advising defendants of the constitutional rights they waive when pleading guilty or no contest. State v. Wallace
(Oct. 25, 1995), Montgomery App. No. 14907, 1995 WL 632088, *3, citing State v. Nero (1990), 56 Ohio St.3d 106. See, also,State v. Ballard (1981), 66 Ohio St.2d 473 (which is interpreted as requiring "scrupulous adherence" to Crim. R. 11 for constitutional rights), and State v. Gipson (Sept.30, 1998), Hamilton App. No. C-970891, 1998 WL 682153, *1. The constitutional rights in question include the right to a jury trial and to confront one's accusers; the privilege against self-incrimination; and the right of compulsory process for obtaining witnesses on one's behalf. 66 Ohio St2d at 118. On the other hand, only substantial compliance with Crim. R. 11(C)(2) is required for non-constitutional rights. Wallace, 1995 WL 632088, at *3.
 {¶ 22} In Ballard, the Ohio Supreme Court stressed that a "rote recitation" of Crim. R. 11 is not required.66 Ohio St.2d at 120. Our own district has held that oral ambiguities in the oral colloquy can be reconciled in some cases by a written acknowledgment of the plea and waiver of trial rights. State v.Dixon, Clark App. No. 01CA17, 2001-Ohio-7075, 2001 WL 1657836, *3. However, we have also stressed that "the writing does not substitute for an oral exchange when it is wholly omitted." Id. Accord, State v. Saaty (Mar. 4, 1997), Franklin App. No. APA06-777, 1997 WL 101654, *3; State v. Timmons (Sept. 27, 1999), Pickaway App. No. 98CA38, 1999 WL 787918; and Gipson, 1998 WL 682153, *3 (compliance with Crim. R. 11 is determined by examining trial court's communication to defendant, "not defendant's subjective understanding of his rights," as evidenced by educational accomplishments, representation by experienced counsel, and execution of written plea agreement).
 {¶ 23} Accordingly, even though Thompson executed a written waiver of his rights, it cannot substitute for the trial court's omission of any discussion of the right to confront Thompson's accusers. As a result, this part of the first assignment of error has merit and must be sustained.
 {¶ 24} Thompson also challenges errors the trial court made in discussing the potential sentences. Specifically, the court said that the charge for aggravated burglary carried with it "a maximum possible penalty prison term of 3, 4, 5, 6, 7, 8, 9, or 10 years and or a maximum possible fine of 20 years." This was an obvious misstatement that would not have misled anyone. Furthermore, any error was irrelevant. The court did not impose any sentence for aggravated burglary because the parties had already agreed to a two year sentence for escape and abduction. In fact, the court explicitly said that no further sentence for aggravated burglary would be imposed.
 {¶ 25} Thompson does not dispute this, but claims that the possibility of a 20 year sentence was enough to "scare" him from exercising his right to trial. However, the record clearly indicates that both the State and Thompson believed the maximum potential exposure was 16 years, not 20. Since both sides also agreed to a two-year total sentence, Thompson's claim is not credible.
 {¶ 26} The remaining alleged errors relate to the trial court's statements about the terms for escape and abduction. These claims are moot, since the case must be reversed and remanded for further proceedings. However, on remand, the trial court should correctly refer to any potential sentences, to avoid confusion.
 {¶ 27} Based on the preceding discussion, the first assignment of error has merit and is sustained, in part.
 II {¶ 28} Although the first assignment of error disposes of most of the appeal, we should also consider the second assignment of error, in which Thompson contends that the trial court erred in overruling his speedy trial motion. If Thompson's speedy trial claim is correct, all charges in the second indictment must be dismissed.
 {¶ 29} Under R.C. 2945.71(C)(2), "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C.2945.71(E) further provides that:
 {¶ 30} "[f]or purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 31} When the termination entry was filed for the first indictment, 51 days had elapsed, all of which were chargeable to the State. Another 59 days elapsed before Thompson filed the speedy trial motion on August 11, 2003. If the triple-count provision applies, and no exceptions exist, Thompson would be entitled to dismissal of the charges in the second indictment, since 110 days elapsed between his arrest and the date he was brought to trial on those charges (August 25, 2003). Tripled, the time equals 330 days, which exceeds the 270 days permitted under R.C. 2945.71(C).
 {¶ 32} The State claims that Thompson is not entitled to the benefit of the triple-count provision because he was not being held in jail solely on the pending charges. According to the State, when the second indictment was issued, Thompson had already pled no contest to the first indictment, meaning that the first charge was no longer pending. The State also says that even if the triple-count provision applies, the days at issue either count against Thompson or do not count against the State because any delay was reasonable. In contrast, Thompson argues that speedy trial time began to run from the time of the original indictment, and that any delay fails to qualify as a permissible extension of time.
 {¶ 33} In State v. Baker, 78 Ohio St.3d 108, 1997-Ohio-229, the Ohio Supreme Court held that when a subsequent indictment is issued,
 {¶ 34} "the state is not subject to the speedy trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." Id. at syllabus.
 {¶ 35} After reviewing the file, we find that the State knew about all pertinent facts at the time of the initial indictment. Specifically, the New Lebanon Police Department supplement report, which is dated the day of the crime, outlines facts that support charges of domestic violence, abduction, escape, aggravated burglary, and violation of a protection order. In fact, a police investigator met with a prosecutor the day of the crime and discussed the case. The investigation ended the same day, and no further report was made.
 {¶ 36} In explaining why only an indictment for domestic violence was originally filed, the State claims that the prosecutor who was responsible for grand jury cases could not present the case when it was originally scheduled. A substitute had instructions to present the additional charges, but failed to do so. When the regular prosecutor realized that the indictment contained only one charge, he scheduled time to present the remaining charges to the grand jury.
 {¶ 37} Regardless of the explanation, the State knew the relevant facts at the time of the initial indictment and the second indictment was subject to the speedy trial timetable that began on April 24, 2003. Thus, the State had 270 days from that date to bring Thompson to trial, or 90 days, if the triple-count provision applies. The trial date of August 25, 2003, fit within the 270 day time frame, but not within the 90 day limit, which expired on July 22, 2003.
 {¶ 38} In State v. MacDonald (1976), 48 Ohio St.2d 66, the Ohio Supreme Court held that the triple-count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." Id. at syllabus. See, also, State v.Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96. Because Thompson was being held on his conviction as well as the second indictment, the State contends that Thompson can only triple-count the days between the initial indictment and his no contest plea to that charge (April 24, 2003 to May 28, 2003).
 {¶ 39} To address the State's argument, we first look at the statute itself, which provides that "[f]or purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
 {¶ 40} The statute specifically restricts triple-counting to "each day during which the accused is held in jail in lieu of bail." We disagree that this period ended when Thompson pled guilty, as the charges were still pending and bail was still imposed. See State v. Collins (1993), 91 Ohio App.3d 10, 16
(holding that "prior to sentencing, no order of commitment exists and defendant is still, in effect, being held for the pending charge"). However, when the termination entry was filed on June 13, 2003, bond was released, and Thompson was sent to CRC. At that point, Thompson was no longer being held "in lieu of bail" and the time thereafter cannot be triple-counted.
 {¶ 41} MacDonald is not precisely on point, but the general inferences to be drawn from that case are instructive. InMacDonald, the defendant was charged with state and federal charges, and was being held concurrently at one point on both sets of charges. Later, he was incarcerated in federal prison while the state charges were still pending. 48 Ohio St.2d at 67. As we noted, the court held that the triple-count provision applied only to "defendants held in lieu of bail solely on the pending charge." Id. at syllabus. In particular, the court noted that the defendant:
 {¶ 42} "was not entitled to the triple-count provision after July 29, 1974, as he was not being held solely on the pending charges. He was being held jointly on the federal and state charges. Had the Cuyahoga County prosecutor decided to drop his charges, appellee would not have been released because he was then serving a two-year federal prison sentence. Further, no bail on the state charges could have been offered appellee because of the federal sentence. Appellee therefore was not being held in lieu of bail solely on the pending charge, and consequently the triple-count provision does not apply." Id. at 43.
 {¶ 43} Unlike McDonald, the present case does not involve multiple charges based on different incidents. However, we infer from the above comments that the fact of incarceration precludes a finding that the defendant is being held "in lieu of bail."
 {¶ 44} In Collins, the defendant committed several offenses on different dates, but all the offenses were combined in a single indictment. 91 Ohio App.3d at 13. As in the present case, the defendant pled guilty to one charge, was sentenced, and was committed to CRC. Id. The remaining five charges were tried a few months later, and he was found guilty of three charges. Id. On appeal, the Sixth District Court of Appeals found that the defendant's speedy trial rights had been violated. Id. at 14.
 {¶ 45} Specifically, the court found that because the State charged all the offenses under a single indictment and did not move to sever, it could not choose, on appeal, to treat the offenses as having been severed. Id. at 15. We agree with this reasoning.
 {¶ 46} The Sixth District then counted the trial time from the date the warrant was issued, up to the time the defendant was tried for the remaining charges. The triple-count limit of 90 days ended on March 22, but the defendant was not brought to trial until May 19. This established a prima facie case for discharge, since the time exceeded the ninety-day triple count limit. Id. at 15.
 {¶ 47} The State tried to argue that the triple-count provision did not apply because the defendant was being held on other charges. However, the Sixth District disagreed, commenting that:
 {¶ 48} "Crim. R. 32(A) provides that `pending sentence, the court may commit the defendant or continue or alter the bail.' A defendant has no constitutional right to bail after judgment of conviction. * * * Prior to sentencing, no order of commitment exists and the defendant is still, in effect, being held for the pending charge. If a court chooses to continue a bond for a defendant, pending sentence for one conviction, even while awaiting trial on remaining charges, an accused who remains in jail is still being held `in lieu of bail.'
 {¶ 49} "In the present case, the trial court continued appellant's bail, pending sentencing, and even thereafter. We agree that once appellant was sentenced on March 27, 1992, and committed to the correctional facilities in Orient, Ohio, appellant was no longer in jail `in lieu of bond.' Had appellant been able to post bond at this point, he would not have been released, since he was incarcerated as part of his sentence for the breaking and entering conviction.
 {¶ 50} "However, according to the record, the court chose to continue bail between the conviction and date of sentencing. Therefore, appellant's days in jail in lieu of bond continued until March 27, 1992. The triple-counted days for all counts remaining in the single indictment ended, for purposes of R.C.2945.71, on March 22, 1992. Accordingly, appellant's motion to dismiss, which was timely filed, should have been granted by the trial court." Id. at 16-17.
 {¶ 51} Although the present case differs somewhat fromCollins, the pertinent point is that defendants are no longer jailed "in lieu of bail" after being committed to prison, because they no longer have the ability to post bond or to be released on bond. If Thompson had been committed to CRC after July 22 (the original speedy trial date), then his motion for discharge would have been well-taken. However, he was sent to CRC on June 13, 51 days after speedy trial time began. Using triple-counting, that amounted to 153 days. After that point, 79 more days elapsed before Thompson's motion to dismiss was filed. Due to the timing of the trial court's ruling on that motion, as well as another motion that Thompson filed, no more speedy trial days elapsed before trial. Therefore, only 232 total days elapsed, which was within the time requirement.
 {¶ 52} Based on the preceding discussion, the second assignment of error is without merit and is overruled.
 III {¶ 53} In the third assignment of error, Thompson claims that the trial court erred in rejecting a motion to dismiss that was based on double jeopardy and collateral estoppel. We will also consider this assignment of error, since these matters could affect the proceedings on remand.
 {¶ 54} Both sides agree that the double jeopardy test outlined in Blockburger v. United States (1932), 284 U.S. 299
does not apply. Specifically, the charges in the second indictment (except the domestic violence charge that was dismissed) require proof of elements or facts not needed to prove the charge in the first indictment. However, Thompson claims that under Ashe v. Swenson (1970), 397 U.S. 436, 90 S.Ct. 1189,25 L.Ed.2d 469, the State cannot pursue a second prosecution that is based on facts and circumstances the State was aware of when it presented the first indictment to the grand jury.
 {¶ 55} In Ashe, the defendant was one of four men arrested for robbing several persons at a poker game. Initially, the defendant was tried on a charge of robbing one victim, and was acquitted due to insufficient evidence. The State then tried him on a robbery charge for a second victim. 397 U.S. at 439. However, the United States Supreme Court applied collateral estoppel, and held that the defendant could not be prosecuted a second time because the issue of his identity as one of the robbers had already been determined in his favor. Id. at 446-47.
 {¶ 56} Subsequently, in State v. Lovejoy,79 Ohio St.3d 440, 1997-Ohio-371, the Ohio Supreme Court observed that:
 {¶ 57} "[c]ollateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel "`means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" * * * Collateral estoppel generally refers to the acquittal prong of double jeopardy." Id. at 443-444, quoting from Ashe, 397 U.S. at 443.
 {¶ 58} Notably, Thompson was not acquitted in a prior proceeding. Instead, he pled no contest to domestic violence and was found guilty of that charge. Consequently, there are no factual findings in Thompson's favor (nor does he claim any such facts) to which collateral estoppel might apply.
 {¶ 59} By pleading no contest, Thompson admitted the facts in the indictment, which included: 1) that on April 23, 2004, Thompson knowingly caused or attempted to cause physical harm to a family or household member (Donna Thompson); 2) the attempt occurred after Thompson pled guilty previously to or was convicted of domestic violence on January10, 2002, in the case ofState of Ohio v. Thompson, Case No. 02-CRB-00019-A, in the Miamisburg Municipal Court.
 {¶ 60} Assuming for the sake of argument that collateral estoppel could apply, these facts would be "established" for purposes of the second indictment and could not be re-litigated. As we stressed, these are not facts that were decided in Thompson's favor and provide no basis for acquittal. Accordingly, we find no merit in the collateral estoppel argument, and the third assignment of error is overruled.
 IV {¶ 61} Assignments of error four and five relate to the one-year consecutive sentences that were imposed for the escape and abduction charges, and to changes the trial judge made after the sentences were imposed. However, because this matter is being reversed and remanded, any sentencing issues are moot.
 {¶ 62} Based on the preceding discussion, the first assignment of error is sustained, the second and third assignments of error are overruled, and the fourth and fifth assignments of error are overruled, as moot. Accordingly, the judgment of the trial court is reversed and this matter is remanded for further proceedings.
Wolff, J., and Young, J., concur.