JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Elizabeth Roberts, a/k/a Charmaine Woods, appeals from the judgment of the Common Pleas Court, rendered after a jury verdict, finding her guilty of three counts of forgery, three counts of uttering, one count of taking the identity of another, and one count of tampering with records, and sentencing her to five years incarceration. For the reasons that follow, we affirm.
 {¶ 2} In December 2002, the Cuyahoga County Grand Jury indicted Roberts on three counts of forgery, in violation of R.C. 2913.31; three counts of uttering, in violation of R.C. 2913.31; one count of taking the identity of another, in violation of R.C. 2913.49; and one count of tampering with records, in violation of R.C. 2913.42.
 {¶ 3} Psychiatric testing determined that Roberts was not competent to stand trial, so she was referred to a psychiatric clinic for restoration. When she was subsequently found competent to stand trial, the trial judge referred her to the Court Psychiatric Clinic for a sanity evaluation. Dr. Schmedlen, the court-appointed psychologist, diagnosed Roberts as suffering from a non-specified psychotic disorder, but found her sane at the time of the alleged offenses. Defense counsel and the prosecutor stipulated to this report.
 {¶ 4} At trial, Adrian Thompson, chief legal officer for the Cleveland Municipal School District (the "District"), testified that all teachers in the State of Ohio must be certified by the State. State law requires that public school teachers undergo background checks prior to being certified; individuals with prior felony criminal convictions will not be certified.
 {¶ 5} Thompson testified further that in 1995, a woman named Charmaine Woods applied for a position as a media specialist with the District. Woods submitted an application on which she stated that she had no criminal convictions. She also submitted fingerprints, which the District sent to the Bureau of Criminal Investigation and Identification ("BCI") for a background check. BCI subsequently informed the District that Woods had no prior felony criminal convictions and she was hired.
 {¶ 6} In June 2001, Woods applied through the District for additional certification to teach special education. John Guarino, a security consultant for the District, took Woods' fingerprints and submitted them to BCI. This time, BCI reported that Woods' prints matched those of an individual named Elizabeth Roberts, who had been convicted and incarcerated in Summit County in 1978 for three counts of grand theft by deception.
 {¶ 7} In February 2002, Thompson met with Woods and her union representative to discuss the discrepancy. During the hearing, Woods was adamant that she did not have a criminal background and accused Thompson of trying to persecute her. After the hearing, Guarino again fingerprinted Woods and sent her prints to BCI, which again reported that Woods' prints matched those of Elizabeth Roberts.
 {¶ 8} Deborah Vekas, an employee of Security Hut, a company that offers fingerprinting and security services to employers, testified that in May 2002, she fingerprinted a woman who identified herself as Charmaine Woods. Vekas testified that the woman appeared to be mentally challenged and was accompanied by an elderly man named John Wiggins, who answered all of the questions Vekas put to her and completed the necessary paperwork for her. Wiggins informed Vekas that the woman needed to be fingerprinted to become a teacher. When she produced a photo identification card that was very difficult to read, Wiggins told Vekas that it had been inadvertently washed in a washing machine. BCI subsequently reported that it could not read the first set of prints given by the woman, so Wiggins brought her in again for reprinting. These prints were successfully read by BCI, which reported no criminal history.
 {¶ 9} Shortly thereafter, Woods approached Thompson with a copy of a BCI report which indicated that she did not have a criminal record. At Thompson's request, in an attempt to clear up the conflicting information about Woods' criminal background, Guarino obtained a copy of the booking photo of Elizabeth Roberts from the Summit County Sheriff's Department. Both Thompson and Guarino concluded that the woman in the booking photo was Woods. Accordingly, in December 2002, the District placed Woods on administrative suspension pending a criminal investigation.
 {¶ 10} Vekas testified that in September 2003, another woman claiming to be Charmaine Woods appeared at Security Hut and requested that she be fingerprinted. Vekas identified Roberts, the defendant in this case, as that woman. According to Vekas, the tips of Roberts' fingertips had recent burns on them, so she could not fingerprint her.
 {¶ 11} Iris Acord, office manager at Security Hut, testified that she worked as a nurse for approximately twenty years before she began working at Security Hut. Acord observed Roberts' fingertips when she came in to be fingerprinted and concluded that the burns were caused by heat or fire, rather than acid.
 {¶ 12} Lonnie Rudasill, identification supervisor at BCI, testified that BCI keeps records of all arrests made in the State of Ohio. He testified further that prior to 2000, BCI examiners would manually examine the fingerprint cards provided to BCI and search through the over three million cards on file to determine if the name, date of birth, or Social Security number on the card matched another card in the file. In April 2000, however, BCI began using the Automated Fingerprint Identification System, which is a large computer database that allows BCI to match fingerprints by name, date of birth, Social Security number, or the prints themselves.
 {¶ 13} According to Rudasill, from June 2001 to September 2003, BCI received seven fingerprint samples from a person identified as Charmaine Woods. Five of the samples matched the fingerprints on the 1978 booking card for Elizabeth Roberts. The other two print samples did not match Roberts' fingerprints, nor did they match each other. In all, BCI received three different sets of fingerprints, all supposedly from an individual named Charmaine Woods. During trial, Roberts, using the name Charmaine Woods, insisted that she be fingerprinted yet again. BCI reported, again, that her fingerprints matched those of Elizabeth Roberts.
 {¶ 14} Thomas Murphy, special agent for BCI, testified that as a result of his investigation, he determined that the individual purporting to be Charmaine Woods was actually Elizabeth Roberts. In the course of his investigation, Murphy learned that the real Charmaine Woods had attended East High School in Columbus with Elizabeth Roberts. The real Woods withdrew from high school in 1968 for health reasons and died in 1969. Elizabeth Roberts failed to report to school in 1968 after she gave birth to a son.
 {¶ 15} Murphy testified further that John Wiggins admitted to him that he had known Elizabeth Roberts for over 25 years and was her former boyfriend. Wiggins told Murphy that he had taken Roberts and another woman to Security Hut in 2002 and assisted that woman in obtaining fingerprints under the name Charmaine Woods.
 {¶ 16} Eddie Smith testified that he married Elizabeth Roberts in October 1974. Smith divorced Roberts less than one year later, however, because she was involved in welfare fraud. Smith identified the defendant as the woman named Elizabeth Roberts whom he had married and divorced.
 {¶ 17} Nathaniel Woods, brother of the deceased Charmaine Woods, testified that his sister and Elizabeth Roberts had been friends during high school. He testified further that he had gone on several double dates with Roberts and her boyfriend during high school and was positive that the defendant was the same Elizabeth Roberts.
 {¶ 18} Jessie Gales, another brother of the deceased Charmaine Woods, testified that his sister died in 1969 of a heart condition. He testified further that the defendant was not his sister Charmaine.
 {¶ 19} After the trial court denied her Crim.R. 29 motion for acquittal, Roberts testified on her own behalf. She denied ever seeing Eddie Smith or Woods' brothers before and insisted that "I've been Charmaine Woods all my life." She further denied that she was the person in the 1978 booking photo and denied ever serving time in prison. She testified that the District was involved in a conspiracy to get rid of her because she was not part of a particular social clique at the District and insisted that the witnesses and fingerprint records identifying her as Elizabeth Roberts were wrong. She also insisted that she would never deliberately physically harm herself, and testified that she had burned her fingers while trying to put out a grease fire in her kitchen and then aggravated the burns by getting lye on her fingers while she was applying texturizer to her husband's hair.
 {¶ 20} The jury returned a guilty verdict on all counts and, after a court-ordered polygraph examination and additional psychiatric testing were completed, the trial court sentenced Roberts to five years incarceration. This appealed followed.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 21} R.C. 2901.01(A)(14) provides that "[a] person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves, * * * that at the time of the commission of the offense, the person did not know, as a result of a mental disease or defect, the wrongfulness of the person's acts."
 {¶ 22} R.C. 2945.371 provides that, if a defendant enters a plea of not guilty by reason of insanity, the trial court may order one or more independent evaluations of the defendant's mental condition at the time of the alleged offenses.
 {¶ 23} In her first assignment of error, Roberts contends that her counsel was ineffective in stipulating to her sanity without first requesting an independent expert evaluation of her mental status pursuant to R.C. 2945.371. We disagree.
 {¶ 24} In order to establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990), 497 U.S. 1011. Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Stricklandv. Washington (1984), 466 U.S. 668.
 {¶ 25} In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case and it must give great deference to counsel's performance. Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id.
 {¶ 26} Here, the record reflects that in his report, Dr. Schmedlen found, "with reasonable psychological certainty," that, even if Roberts suffered from delusions or an altered or dissociated mental state at the time of the alleged offenses, she understood the wrongfulness of her actions. He stated:
 {¶ 27} "[Her] severe mental disease did not cause her not to know the wrongfulness of her alleged acts. Even if delusional, or in an altered or dissociated state of mind, the nature of the allegations necessarily indicate[s] knowledge of wrongfulness. That is, attempting to create an altered identity implies knowledge of the falsification. Such falsification indicates an awareness of wrongfulness."
 {¶ 28} The record further reflects that Roberts was also examined by two experts in the field of disassociative identity disorder, who similarly concluded that she understood the wrongfulness of her actions. In addition, Roberts underwent a court-ordered polygraph examination after trial. The polygraph examiner reported that Roberts "repeatedly reacted deceptively" in response to his questions regarding her subjective belief as to her identity.
 {¶ 29} It is apparent from the record that Roberts received more than one independent expert evaluation regarding her mental status at the time of the alleged offenses. It is also apparent from the record that the experts uniformly agreed that she understood the wrongfulness of her actions at the time of the offenses. In light of the consistent conclusion that she understood the wrongfulness of her actions, it is highly unlikely that yet another expert report would have elicited a different opinion regarding Roberts' ability to appreciate the wrongfulness of her actions. Accordingly, she did not demonstrate that counsel's failure to request another report and his stipulation to the sanity report fell below an objective standard of representation or that she was prejudiced thereby.
 {¶ 30} Roberts further argues that the trial court erred in allowing defense counsel and the prosecutor to stipulate to the sanity report, as this was a jury issue. She cites no law in support of her argument that the jury is required to decide the issue of whether or not a defendant was sane at the time of the alleged offenses. Here, in light of the expert reports which uniformly concluded that Roberts understood the wrongfulness of her actions at the time of the offenses, we find no error in the trial court's acceptance of the parties' stipulation.
 {¶ 31} Appellant's first assignment of error is overruled.
 SUFFICIENCY OF EVIDENCE REGARDING TAKING THE CHARGE OF TAKING THE IDENTITY OF ANOTHER {¶ 32} In count seven, Roberts was convicted of taking the identity of another in violation of R.C. 2913.49. In her second assignment of error, Roberts argues that the trial court erred in denying her Crim.R. 29 motion for acquittal regarding this count because there was insufficient evidence to support her conviction.
 {¶ 33} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 34} The version of R.C. 2913.49 in effect at the time of the commission of the offenses provided, in relevant part:
 {¶ 35} "(B) No person shall obtain, possess, or use any personal identifying information of any living or dead individual with the intent to fraudulently obtain credit, property, or services or avoid the payment of a debt or any other legal obligation.
 {¶ 36} "* * *
 {¶ 37} "(E) Whoever violates this section is guilty of taking the identity of another. Except as otherwise provided in this division, taking the identity of another is a misdemeanor of the first degree. * * * If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is $100,000 or more, taking the identity of another is a felony of the third degree."
 {¶ 38} Roberts argues that her conviction was not supported by sufficient evidence because the State did not present any evidence that her use of Woods' personal information resulted in the "theft" of any "credit, property, services, debt or other legal obligation" in an amount of $100,000 or more. She misunderstands the statute, however.
 {¶ 39} There is no requirement in the statute that a defendant's use of another's personal information result in a "theft." The statute simply provides that if the value of the credit, property, services, debt, or other legal obligation involved in the violation is greater than $100,000, the offense is a felony of the third degree.
 {¶ 40} Here, the State produced evidence that defendant, knowing that she could not obtain a teaching position with the District under the name Elizabeth Roberts because of her prior criminal conviction, obtained and used Woods' name, social security number, and date of birth to get a job with the District. The State also produced evidence that Roberts was employed by the District, under the name Charmaine Woods, from 1995 through 2002. The evidence indicated that Roberts was initially employed at a salary of $32,000 per year; later, her salary was increased to $52,000 per year.
 {¶ 41} Construing this evidence in a light most favorable to the prosecution, we find there was sufficient evidence from which the jury could have concluded that the District paid Roberts over $100,000 as a result of her taking Charmaine Woods' identity.
 {¶ 42} Appellant's second assignment of error is therefore overruled.
 MANIFEST WEIGHT OF THE EVIDENCE {¶ 43} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v.Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 44} In her third assignment of error, Roberts argues that the State failed to prove an essential element of each count, i.e., that she committed the offense knowingly and with purpose to defraud. She contends that her convictions were against the manifest weight of the evidence because the evidence established that she genuinely believed herself to be Charmaine Woods and, therefore, she did not have the requisite intent to defraud. We disagree.
 {¶ 45} The evidence clearly established that the defendant was Elizabeth Roberts, not Charmaine Woods, as she represented herself to be. Moreover, the evidence established that defendant knew she was not Woods, but was determined to continue the deception for as long as possible. In 2002, after BCI reported that defendant's fingerprints matched those of Elizabeth Roberts, a prior felon, John Wiggins and defendant went to Security Hut with an unidentified, mentally challenged woman, and obtained fingerprints for this woman, using the name Charmaine Woods. Later, after BCI issued a report indicating no criminal history regarding these fingerprints, defendant gave the report to Adrian Thompson, chief legal counsel for the District, and told him that she had no criminal history. Subsequently, trying once again to obtain a report that indicated she did not have a criminal history, defendant burned the tips of her fingers in an obvious attempt to make her fingerprints difficult to read so they would not match those of Elizabeth Roberts.
 {¶ 46} We do not perceive these to be the actions of an individual who is not aware of the wrongfulness of her actions. Rather, these are the actions of an individual who obviously understood that she had created a false identity and was determined to preserve that falsehood.
 {¶ 47} After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury lost it way and created such a miscarriage of justice that Roberts' convictions must be reversed.
 {¶ 48} Appellant's third assignment of error is overruled.
 SENTENCING {¶ 49} In her fourth assignment of error, Roberts contends that her sentence totaling five years incarceration was contrary to law.
 {¶ 50} As an initial matter, we note that while her appeal was pending, Roberts filed a pro se motion for reconsideration of sentence in the trial court. The trial court subsequently granted Roberts' motion, reducing her term of incarceration to three and one-half years.
 {¶ 51} This court later remanded this case to the trial court for resolution of a pending motion for a new trial and several other issues. In our journal entry, we noted that the trial court improperly reduced Roberts' sentence while her appeal was pending because it was without jurisdiction to do so.
 {¶ 52} The trial court subsequently issued a journal entry resolving the issues raised by this court in the remand. In its journal entry, the trial court also stated that it had retained jurisdiction of the sentencing issue, despite Roberts' appeal, and, therefore, it had properly reduced Roberts' sentence.
 {¶ 53} The trial court is incorrect. "A notice of appeal divests the trial court of jurisdiction over that part of the final order, judgment or decree which is sought to be reviewed." State v. Wright, Cuyahoga App. No. 81644, 2003-Ohio-1958; Majnaric v. Majnaric (1975),46 Ohio App.2d 157, 158. Here, Roberts' appeal specifically challenges her sentence of five years incarceration. Accordingly, the trial court was without jurisdiction to reduce her sentence during the pendency of her appeal and, therefore, its order reducing the sentence to three and one-half years incarceration is void ab initio.
 {¶ 54} A reviewing court will not reverse a sentence unless that court finds, by clear and convincing evidence, that the sentence is unsupported by the record or is contrary to law. See R.C. 2953.08(G).
 {¶ 55} Here, Roberts was convicted of three counts of forgery and three counts of uttering, which are fifth degree felonies, each subject to six to eighteen months incarceration. She was also convicted of one count of taking the identity of another and one count of tampering with records, which are both third degree felonies, each subject to possible prison terms of one to five years.
 {¶ 56} The overriding purpose of felony sentencing is to protect the public from future crime by the offender and to punish the offender. R.C.2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. Id.
 {¶ 57} While a court that imposes a sentence under R.C. Chapter 2929 has the discretion to determine the most effective manner in which to achieve this purpose, it must consider the factors set forth in R.C.2929.12(B) and (C) regarding the seriousness of the offender's conduct and those in R.C. 2929.12(D) and (E) regarding the offender's likelihood of recidivism.
 {¶ 58} Here, Roberts contends that the trial court did not consider the requisite factors when sentencing her. The record does not support her argument, however.
 {¶ 59} Our review of the transcript indicates that at the sentencing hearing, the trial judge specifically found that, due to Roberts' deceit, the taxpayers paid her monies under false pretenses. R.C.2929.12(B)(2). In addition, he found that her offense violated her position of trust as a public school teacher. R.C. 2929.12(B)(3). He also noted that she had prior convictions, for which she had previously been incarcerated. R.C. 2929.12(D)(2). Accordingly, it is apparent that the trial court considered the applicable factors in sentencing Roberts as it did.
 {¶ 60} Roberts also contends that the trial court made no analysis regarding whether her sentence was consistent with those who have committed similar crimes. This court has previously held that R.C.2929.11(B) imposes a duty upon the trial court to insure consistency among the sentences it imposes. This court has also recognized, however, that trial courts are limited in their ability to address the consistency mandate, and appellate courts are hampered in their review of this issue, by the lack of a reliable body of data upon which they can rely. See, e.g., State v. Biascochea, Cuyahoga App. No. 82481, 2003-Ohio-4950. Thus, we have held that "although a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal." Statev. Armstrong, Cuyahoga App. No. 81928, 2003-Ohio-5932, at ¶ 29 (McMonagle, J., concurring). See, also, State v. Mayes, Cuyahoga App. No. 82592, 2004-Ohio-2014. Having failed to raise this issue at sentencing, Roberts cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders.
 {¶ 61} Appellant's fourth assignment of error is therefore overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Karpinski, J., concur.
*Sitting by Assignment: Judge Joyce J. George, Retired, of the Ninth District Court of Appeals.