OPINION
{¶ 1} Kevin Bell appeals from his conviction and sentence for Importuning. Bell contends that the trial court erred in admitting his videotaped statement, because the statement was not a confession. We conclude that the trial court did not err in admitting Bell's videotaped statement, because it was admissible as an out-of-court statement made by a party-opponent, pursuant to Evid.R. 801(D)(2).
 {¶ 2} Bell contends that the trial court erred in admitting Bell's videotaped statement, because the State failed to present independent corrobative evidence of Importuning to establish the corpus delicti, thereby allowing the confession to be admitted. We conclude that the trial court did not err in admitting Bell's videotaped statement, because the State presented independent corrobative evidence, including the testimony of Detective Alonzo Wilson and Melinda Barnthouse, as well as the log of the first online conversation between AOL screen names, "WT309FD" and "Molly14Ohio," to establish the corpus delicti of the crime of Importuning.
 {¶ 3} Bell contends that the trial court erred in finding him guilty of Importuning, because the State failed to present sufficient evidence to establish that he was "WT309FD," the person who solicited sex from "Molly14Ohio" on November 13, 2002. After reviewing the evidence, we conclude that reasonable minds could reach the conclusion that it was Bell who solicited sex from "Molly14Ohio" on November 13, 2002 using the AOL screen name "WT309FD."
 {¶ 4} Bell contends that his sentence is contrary to law, because the trial court failed to consider any of the factors listed in R.C. 2929.12(B) and (C) and failed to make any findings as required under R.C. 2929.12. We conclude that the trial court properly considered the factors set forth in R.C. 2929.12 and found that community control sanctions were consistent with the purposes and principles of sentencing set forth in R.C. 2929.11.
 {¶ 5} Bell contends that the trial court, in notifying Bell that he would face "up to 11 months" of imprisonment for any violation of his community control sanctions, erred in failing to notify him of a specific prison term to which he would be subject if he were to violate his community control sanctions. In accordance with State v. Brooks,103 Ohio St.3d 134, 2004-Ohio-4746, 814 N.E.2d 837, we conclude that the trial court, in notifying Bell that he would face "up to 11 months" of imprisonment were he to violate his community control sanctions, erred in failing to notify Bell of a specific prison term to which he would be subject if he were to violate his community control sanctions. We remand this matter to the trial court with instructions to notify Bell of the specific prison term to which he will be subject if he violates his community control sanctions. Bell contends that his six-month imprisonment sentence is inconsistent with sentences imposed on other offenders convicted of similar offenses and requests that his sentence be modified to just five years of community control sanctions, without any imprisonment, in order for his sentence to be consistent with sentences imposed on other offenders convicted of similar offenses. Because Bell failed to raise this issue in the trial court, he cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders.
 {¶ 6} Accordingly, the judgment of conviction is affirmed, but the sentence is reversed, and this cause is remanded for further proceedings consistent with this opinion.
 I {¶ 7} On November 13, 2002, Detective Alonzo Wilson of the Xenia Police Division, Internet Child Protection Unit, posed as a fourteen-year old girl online with an America Online (AOL) screen name "Molly14Ohio," and was contacted by someone with the AOL screen name "WT309FD." Detective Wilson kept a log of the conversations between "WT309FD" and "Molly14Ohio." A log of the first conversation between "WT309FD" and "Molly14Ohio" records the conversation as follows:
 {¶ 8} "Begin IM — 11/13/2002 03:04 PM
 {¶ 9} "WT309FD: like older guys
 {¶ 10} "Molly14Ohio: Hi
 {¶ 11} "Molly14Ohio: do I no u
 {¶ 12} "WT309FD: like older guys
 {¶ 13} "WT309FD: no
 {¶ 14} "Molly14Ohio: I guess if they r nice
 {¶ 15} "WT309FD: im 23
 {¶ 16} "Molly14Ohio: im 14
 {¶ 17} "WT309FD: can I ask a personal ?
 {¶ 18} "Molly14Ohio: yep
 {¶ 19} "WT309FD: what size bra you wear??
 {¶ 20} "Molly14Ohio: 32 a/b
• * *
 {¶ 21} "WT309FD: you got a lot of hair on ceratain [sic] areas
 {¶ 22} "Molly14Ohio: duh im 14 years old not 4 hehe
• * *
 {¶ 23} "WT309FD: ok so you do have a lot
 {¶ 24} "Molly14Ohio: yessssssss
 {¶ 25} "WT309FD: can I see it
 {¶ 26} "Molly14Ohio: hehe right how
• * *
 {¶ 27} "WT309FD: you show it to me
 {¶ 28} "Molly14Ohio: okkkkkkkkk
 {¶ 29} "WT309FD: do you ever play with your self
 {¶ 30} "Molly14Ohio: I have but I feel dumb doing that
• * *
 {¶ 31} "WT309FD: cool im in centerville
 {¶ 32} "WT309FD: my luck your probably a cop
• * *
 {¶ 33} "Molly14Ohio: right like im a cop
 {¶ 34} "Molly14Ohio: r u
 {¶ 35} "WT309FD: no
 {¶ 36} "WT309FD: im a firefighter
• * *
 {¶ 37} "WT309FD: are you a virgin??
 {¶ 38} "Molly14Ohio: don't laugh but yes
• * *
 {¶ 39} "WT309FD: so what did you do when you played with your self?
 {¶ 40} "Molly14Ohio: just touch and stuff its kinda wierd [sic] talking about it hehe
• * *
 {¶ 41} "WT309FD: its ok
 {¶ 42} "WT309FD: where you naked
 {¶ 43} "Molly14Ohio: I no but
 {¶ 44} "Molly14Ohio: yes
• * *
 {¶ 45} "WT309FD: can you do it now
 {¶ 46} "Molly14Ohio: do what
 {¶ 47} "WT309FD: playwith [sic] your self
• * *
 {¶ 48} "WT309FD: ok then would you shave
 {¶ 49} "Molly14Ohio: I guess
 {¶ 50} "WT309FD: LIKE I SAID YOUR [SIC] PROBABLY A COP SETTING A TRAP
• * *
 {¶ 51} "WT309FD: you can call me
 {¶ 52} "Molly14Ohio: yes
 {¶ 53} "WT309FD: and leave a voice mail on my phone so I can hear your voice
• * *
 {¶ 54} "WT309FD: are you going to do it now??
 {¶ 55} "Molly14Ohio: yes
 {¶ 56} "WT309FD: ok do you have to sign off
 {¶ 57} "Molly14Ohio: yes and I have to hook the phone back up ok
 {¶ 58} "WT309FD: ok but then leave a voice mail and then sign back on my name is kevin
• * *
 {¶ 59} "Molly14Ohio: what number
 {¶ 60} "WT309FD: 478-2585
• * *
 {¶ 61} "Molly14Ohio: u r not going to answer the phone
 {¶ 62} "WT309FD: no
• * *
 {¶ 63} "WT309FD: then get back on here
 {¶ 64} "WT309FD: bye
 {¶ 65} "Molly14Ohio: bye
 {¶ 66} "End IM — 11/13/2002 03:30 PM"
 {¶ 67} Detective Wilson then had a female employee in the police department call the phone number and leave a message posing as "Molly14Ohio." The female employee left the message, "This is me and is this you, Kevin," and Detective Wilson got back online as "Molly14Ohio." At 3:49 p.m. that same day, "WT309FD" contacted "Molly14Ohio" again and stated "you are a female." "WT309FD" then began making sexual statements to "Molly14Ohio" including, in part, "its just been a thing of mine to get with one younger female," "will i [sic] get to see you naked," "do you want me to touch your boobs," "do you wanna touch me," "do you want me to get inside of you," "can I stick something in your butt," "will you suck on it," and "do you want me to eat you out." "WT309FD" then attempted to set up a meeting with "Molly14Ohio" for the next day and told her he would bring her to his house. "WT309FD" contacted "Molly14Ohio" again online on November 23, 26, and 27. On November 23, "WT309FD" sent "Molly14Ohio" a picture of three people and told her he was the guy on the left. That same night, Detective Wilson emailed "WT309FD" a picture of a girl that he represented to "WT309FD" to be fourteen-year old Molly.
 {¶ 68} Detective Wilson determined that the AOL profile of "WT309FD" stated that the profile user's name was Kevin and that he was a firefighter from Centerville. Detective Wilson contacted the Washington Township Fire Chief who informed him that Kevin Bell was a twenty-three year old firefighter, with a Badge Number of 309, who resided at 500 Mooring Lane, Apt. 2-C, Centerville, Ohio. Detective Wilson subpoenaed the AOL subscriber records for "WT309FD," and discovered that the subscriber on the account, Melinda Barnthouse, also resided at 500 Mooring Lane, Apt. 2-C, Centerville, Ohio.
 {¶ 69} On December 3, 2002, Detective Alonzo Wilson interviewed Bell, and the interview was videotaped. In Bell's videotaped statement, he admitted that he contacted "Molly14Ohio," because he thought it was one of his friends from school. Bell stated that his friend had lived in Ohio and went to school with him, but moved to California when she was fifteen. Bell admitted that the first time he contacted "Molly14Ohio" he tried to set up a meeting with her, because he thought she was his friend from school. Bell also admitted that the first time he contacted "Molly14Ohio" he gave her his cell phone number to call him. Bell admitted that "Molly14Ohio" left a message for him, but when he heard the message he knew it was not his friend. Bell stated that he stopped talking to "Molly14Ohio" when he discovered it was not his friend who left the message on his cell phone. Bell later stated in the interview that he might have communicated with her once more, and then stated that he talked to her every now and then, but about nothing important.
 {¶ 70} Bell was indicted on two counts of Importuning, a felony of the fifth degree, in violation of R.C. 2907.07(D)(2). This case proceeded to a bench trial. Bell was found guilty of Importuning on Count I, and was found not guilty of Importuning on Count II. The trial court found that "beyond a reasonable doubt the elements that the Defendant did, in fact, solicit; that is entice, urge, lure or ask another by means of a telecommunications device encapsulated in State's Exhibit 1, which is the instant messaging documentation provided by the State of Ohio, to engage in sexual activity with the Defendant who was over the age of 18 and the other person was a Law Enforcement Officer posing as an individual over the age of 13 but less than 16 and the offender believed that the other person was 13 or less than 16 or was reckless in that regard, and further, the offender was four or more years older than the other person posing to be a juvenile." The trial court went on to state that it found that "the State has proven beyond a reasonable doubt all those elements necessary, not only in regard to those elements, but also as to in Count I, the instant messaging that occurred on November 13th, as well as the venue, and the identification of the Defendant. The identification being primarily the statement made by the Defendant to Detective Alonzo Wilson which sufficiently identified the Defendant as the person who prepared the instant messaging identified as WT309FD." Regarding Count II, the trial court found that "[i]n the Defendant's statement to Detective Wilson he did not make an admission as to the preparation of the instant messages on November 27th, and the Court finds that the State's position that the language was similar in both, while certainly compelling, does not satisfy the requirement that the author of WT309FD on November 27th was, in fact, the Defendant." Bell was sentenced to five years of community control sanctions, which included a six-month jail sentence. From his conviction and sentence, Bell appeals.
 II {¶ 71} Bell's First and Second Assignments of Error are as follows:
 {¶ 72} "The trial court erred in admitting the appellant's videotaped statement as the statement was not a confession.
 {¶ 73} "The trial court erred in admitting appellant's statement without the state presenting independent corrobative evidence of importuning as mandated by ohio's corpus delicti rule."
 {¶ 74} Bell contends that the trial court erred in admitting his videotaped statement, because the statement was not a confession. Bell argues that he never confessed to committing the crime of Importuning on November 13, 2002, because although he concedes to communicating with "Molly14Ohio" on one occasion, he never offered a time frame as to when the exchange occurred.
 {¶ 75} Detective Alonzo Wilson interviewed Bell on December 3, 2002, and the interview was videotaped. In Bell's videotaped statement, he admitted that he contacted "Molly14Ohio," because he thought it was one of his friends from school. Bell stated that his friend had lived in Ohio and went to school with him, but moved to California when she was fifteen. Bell admitted that the first time he contacted "Molly14Ohio" he tried to set up a meeting with her, because he thought she was his friend from school. Bell also admitted that the first time he contacted "Molly14Ohio" he gave her his cell phone number to call him. Bell admitted that "Molly14Ohio" left a message for him, but when he heard the message he knew it was not his friend. Bell stated that he stopped talking to "Molly14Ohio" when he discovered it was not his friend who left the message on his cell phone. Bell later stated in the interview that he might have communicated with her once more, and then stated that he talked to her every now and then, but about nothing important.
 {¶ 76} Although Bell's videotaped statement does not consist of a full confession by Bell, the statement made by Bell is admissible as a statement made by a party opponent. Evid.R. 801(D)(2) provides that a statement is not hearsay if "[t]he statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth * * *." The State offered the videotaped statement against Bell, and it is undisputed that it is Bell's own statement made in his individual capacity. Therefore, the trial court did not err in admitting Bell's videotaped statement, because it was admissible as a statement made by a party opponent pursuant to Evid.R. 801(D)(2).
 {¶ 77} Bell contends that even if the videotaped statement was a confession, the State failed to present independent corrobative evidence to establish the corpus delicti of Importuning, thereby allowing the confession to be admitted. Bell argues that the State failed to present any independent corrobative evidence to establish that he was the person who solicited sex from "Molly14Ohio" on November 13, 2002.
 {¶ 78} In State v. Jennings, Clark App. No. 2002 CA 78, 2003-Ohio-4429, at ¶ 19, we stated as follows:
 {¶ 79} "[T]he corpus delicti of a crime consists of the act and the criminal agency of the act and must be established by evidence outside of a confession before the confession is admissible. See State v. Maranda
(1916), 94 Ohio St. 364, 114 N.E. 1038, paragraphs one and two of the syllabus; see, also, State v. Van Hook (1988), 39 Ohio St.3d 256, 261,530 N.E.2d 883. `The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case.' Maranda, supra, at paragraph two of the syllabus. Rather, `[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged.' Id. The rule `does not require evidence upon all elements of the crime but only `some material element.'' VanHook, supra, at 262, 530 N.E.2d 883, quoting Maranda, supra, at paragraph two of the syllabus. The corpus delicti rule is designed to protect `persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone.' State v. Nobles
(1995), 106 Ohio App.3d 246, 261-62, 665 N.E.2d 1137. However, the rule need not be applied `with a dogmatic vengeance.' State v. Edwards
(1976), 49 Ohio St.2d 31, 36, 358 N.E.2d 1051."
 {¶ 80}
Bell was convicted of Importuning, in violation of R.C. 2907.07(D)(2), which states that "[n]o person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * [t]he other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."
 {¶ 81} In Bell's videotaped statement, he admitted that he did contact "Molly14Ohio," and that it was the first time he contacted "Molly14Ohio" when he gave her his cell phone number to call him. Bell also admitted that it was the first time he contacted "Molly14Ohio" when she left a message for him on his cell phone. Bell admitted that when he heard the female voice of "Molly14Ohio," he did not recognize it to be the voice of his friend. Bell admitted that the first time he contacted "Molly14Ohio" he tried to set up a meeting with her, because he thought she was his friend from school.
 {¶ 82} Detective Wilson testified that the online user identified as "WT309FD" first contacted his AOL screen name, "Molly14Ohio," on November 13, 2002 and requested that "Molly14Ohio" call his number and leave a message. "WT309FD" told "Molly14Ohio" that his name was Kevin and that he was a twentythree year old firefighter from Centerville. "Molly14Ohio" informed "WT309FD" that she was fourteen years old. "WT309FD" gave "Molly14Ohio" his phone number and told her to call, leave a message, and then get back online. Detective Wilson testified that after receiving the phone number from "WT309FD," he had a female employee in the police department call the phone number and leave a message posing as "Molly14Ohio." Detective Wilson testified that after the female employee left the message, "This is me and is this you, Kevin," he got back online as "Molly14Ohio."
 {¶ 83} According to the log of the first conversation between "WT309FD" and "Molly14Ohio," "WT309FD" contacted "Molly14Ohio" again and stated "you are a female," confirming that he received the message left by the female employee of the police department. "WT309FD" then began making sexual statements to "Molly14Ohio" including, in part, "its just been a thing of mine to get with one younger female," "will i [sic] get to see you naked," "do you want me to touch your boobs," "do you wanna touch me," "do you want me to get inside of you," "can I stick something in your butt," "will you suck on it," and "do you want me to eat you out." "WT309FD" then attempted to set up a meeting with "Molly14Ohio" for the next day and told her he would bring her to his house.
 {¶ 84} Detective Wilson testified that the AOL profile of "WT309FD" stated that the profile user's name was Kevin and that he was a firefighter from Centerville. Detective Wilson also testified that he contacted the Washington Township Fire Chief, who informed him that Kevin Bell was a twenty-three year old firefighter there and that his Badge Number was 309. Melinda Barnthouse testified that she lived with Bell and subscribed to AOL. Barnthouse testified that "WT309FD" was Bell's AOL screen name.
 {¶ 85} Based on the above-stated evidence, we conclude that the trial court did not err in admitting Bell's videotaped statement, because the State presented sufficient independent corrobative evidence, the testimony of Detective Wilson and Barnthouse and the log of the first conversation between "WT309FD" and "Molly14Ohio," to establish the corpus delicti of the crime of Importuning.
 {¶ 86} Bell's First and Second Assignments of Error are overruled.
 III {¶ 87} Bell's Third Assignment of Error is as follows:
 {¶ 88} "The trial court erred in finding defendant appellant guilty of importuning in violation of Ohio Revised Code Section 2907.07 as the state failed to present sufficient credible evidence to indentity [sic] appellant as WT309FD."
 {¶ 89} Bell contends that the trial court erred in finding him guilty of Importuning, because the State failed to present sufficient evidence to establish that he was "WT309FD," the person who solicited sex from "Molly14Ohio" on November 13, 2002.
 {¶ 90} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. * * * The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts. It must be kept in mind by the appellate court that the jury heard all of the evidence and was instructed as to the law and as a result found the accused guilty beyond a reasonable doubt. Moreover, the relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492, internal citations omitted.
 {¶ 91} The only issue presented by Bell regarding the sufficiency of the evidence of his conviction is whether the State presented sufficient evidence to establish that he was "WT309FD," the person who solicited sex from "Molly14Ohio" on November 13, 2002.
 {¶ 92} Detective Wilson testified that the online user identified as "WT309FD" first contacted his AOL screen name, "Molly14Ohio," on November 13, 2002 and requested that "Molly14Ohio" call his number, leave a message, and then get back online. Detective Wilson testified that after receiving the phone number from "WT309FD," he had a female employee in the police department call the phone number and leave a message posing as "Molly14Ohio." After the message was left, Detective Wilson got back online as "Molly14Ohio," and "WT309FD" contacted "Molly14Ohio" and stated "you are a female," confirming that he had received the message. This is consistent with Bell's admission that the first time he contacted "Molly14Ohio" he gave her his cell phone number to call him, that "Molly14Ohio" left a message for him on his cell phone, and that he heard a female voice on the message that did not match the voice of his friend. Bell also admitted that the first time he contacted "Molly14Ohio" he attempted to set up a meeting with her. According to the log of the first conversation between "WT309FD" and "Molly14Ohio," "WT309FD" did not attempt to set up a meeting with "Molly14Ohio" until after she left the message on his phone, which indicates that Bell continued to communicate with "Molly14Ohio" after he received her message on his phone.
 {¶ 93} Bell's admissions, in conjunction with Detective Wilson's testimony that the first time "Molly14Ohio" was contacted by "WT309FD" was on November 13, 2002, together with evidence presented that the AOL profile of "WT309FD" was Kevin, a firefighter from Centerville, and that Kevin Bell was, in fact, a firefighter at the Washington Township Fire Department with the Badge Number 309, are, in our view, sufficient to permit reasonable minds to conclude that it was Bell who solicited sex from "Molly14Ohio" on November 13, 2002 using the AOL screen name "WT309FD."
 {¶ 94} Bell's Third Assignment of Error is overruled.
 IV {¶ 95} Bell's Fourth Assignment of Error is as follows:
 {¶ 96} "Appellant's sentence is contrary to law."
 {¶ 97} Bell contends that his sentence is contrary to law, because the trial court failed to consider any of the factors listed in R.C. 2929.13(B) and (C) and failed to make any of the findings required under R.C. 2929.13. Although Bell contends his argument is based upon R.C. 2929.13, he quotes from R.C. 2929.12. Thus, when Bell contends that the trial court failed to consider any of the nine factors listed in R.C. 2929.13(B) or any of the four factors listed in R.C. 2929.13(C), it is clear he intended his argument to be based upon R.C. 2929.12(B) and (C).
 {¶ 98} R.C. 2929.12(B) states as follows:
 {¶ 99} "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 {¶ 100} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 101} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 102} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 {¶ 103} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 {¶ 104} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 {¶ 105} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 106} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 {¶ 107} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 {¶ 108} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children."
 {¶ 109} R.C. 2929.12(C) states as follows:
 {¶ 110} "The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 111} "(1) The victim induced or facilitated the offense.
 {¶ 112} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 113} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 {¶ 114} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."
 {¶ 115} The trial court did not err in imposing Bell's sentence if, after considering the factors set forth in R.C. 2929.12, it found that a community control sanction is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. See R.C. 2929.13(B)(2)(b). R.C.2929.11(A) provides that "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."
 {¶ 116} At Bell's sentencing hearing, the trial court stated that it "considered the purposes and principles of sentencing under Ohio Revised Code Section 2929.11 and has balanced the seriousness and recidivism factors pursuant to Ohio Revised Code Section 2929.12." The trial court also stated the following:
 {¶ 117} "The Court having considered these factors finds in this matter that the sentence the Court intends to impose is an appropriate one. To a larger extent, it's based upon the Defendant's prior criminal history and other matters which are reflected in the probation report.
 {¶ 118} "The Court finds that considering these factors that a community control sanction will adequately punish the Defendant and protect the public because the applicable factors under Ohio Revised Code Section 2929.12 indicate recidivism is less likely, and, further, a community control sanction will not demean the seriousness of the offense because the factors under Ohio Revised Code Section 2929.12, decreasing seriousness, outweigh those increasing seriousness.
• * *
 {¶ 119} "THE COURT: All right. I specifically want to advise you, Mr. Bell, one of the sanctions of many of the sanctions the court is imposing in this case is a jail sentence in the Greene County Jail for a period of up to six months.
 {¶ 120} "I want you to understand that the reason the Court is imposing that sentence is due to the nature of this type of offense. This community has made a decision to protect minor children from solicitation of sexual conduct, and this Court feels very strongly, when the facts are appropriate in a case, to extend those protections, and I feel that the punishment of incarceration at this time is appropriate for a violation of this particular offense."
 {¶ 121} After reviewing the record of Bell's sentencing hearing, we conclude that the trial court properly considered the factors set forth in R.C. 2929.12 and found that community control sanctions were consistent with the purposes and principles of sentencing set forth in R.C. 2929.11.
 {¶ 122} Bell's Fourth Assignment of Error is overruled.
 V {¶ 123} Bell's Fifth Assignment of Error is as follows:
 {¶ 124} "The trial court erred in not informing appellant as to a specific term of imprisonment for any violation of his community control sanction."
 {¶ 125} Bell contends that the trial court, in notifying Bell that he would face "up to 11 months" of imprisonment for any violation of his community control sanctions, erred in failing to notify him of a specific prison term to which he would be subject if he were to violate his community control sanctions.
 {¶ 126} "R.C. 2929.19(B)(5) provides that if a sentencing court decides to impose an authorized community control sanction at an R.C.2929.19 sentencing hearing, `the court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender andshall indicate the specific prison term that may be imposed as a sanctionfor the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.' (Emphasis added.)
 {¶ 127} "R.C. 2929.15(B), which details procedures for a trial court to follow when an offender has violated the conditions of community control, reiterates the three options available to the sentencing court that are mentioned in R.C. 2929.19(B)(5) and further provides that if an offender violates the conditions and the court chooses to impose a prison term under R.C. 2929.14, the prison term `shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(3) [sic, (B)(5)] of section 2929.19 of the Revised Code.'" State v. Brooks, 103 Ohio St.3d 134, 2004-Ohio-4746,814 N.E.2d 837, at ¶ 6-7.
 {¶ 128} In Brooks, the Ohio Supreme Court addressed the issue of "`whether or not R.C. 2929.15[B], second sentence, read in pari materia
with R.C. 2929.19(B)(5), second sentence, requires that a court sentencing a defendant to a community control sanction must, at the time of such sentencing, notify the defendant of the specific prison term it may impose for a violation of such sanction, as a prerequisite to imposing a prison term on the defendant for such a violation.'" Brooks,2004-Ohio-4746, at ¶ 4, citing State v. Brooks, 100 Ohio St.3d 1407,2003-Ohio-4948, 796 N.E.2d 535. The Ohio Supreme Court held that "pursuant to R.C. 2929.19(B)(5) and 2929.15(B), a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." Id. at ¶ 29.
 {¶ 129} The Court determined that because R.C. 2929.19(B)(5) clearly requires the offender to be notified of the specific prison term he faces if he violates his community control sanctions, the scenario where the trial court gives the offender notice that the trial court could impose "up to" a certain number of months for a violation of community controls "simply stray[s] too far from the statutory text to constitute compliance." Brooks, 2004-Ohio-4746, at ¶ 26-27. The Court stated that "[b]y choosing the word `specific' in R.C. 2929.19(B)(5) to describe the notification that a trial judge must give when sentencing an offender to community control, the General Assembly has made clear that the judge shall, in straightforward and affirmative language, inform the offender at the sentencing hearing that the trial court will impose a definite term of imprisonment of a fixed number of months or years, such as `twelve months' incarceration,' if the conditions are violated. To comply with the literal terms of the statute, the judge should not simply notify the offender that if the community control conditions are violated, he or she will receive `the maximum,' or a range, such as `six to twelve months,' or some other indefinite term, such as `up to 12 months.' The judge is required to notify the offender of the `specific' term the offender faces for violating community control." Id. at ¶ 19.
 {¶ 130} The Ohio Supreme Court noted that "from the trial court's perspective, the notice does little more than set a ceiling on the potential prison term, leaving the court with the discretion to impose a lesser term than the offender was notified of when a lesser term is appropriate." Brooks, 2004-Ohio-4746, at ¶ 23. The Ohio Supreme Court went on to state that it recognized that "a trial court could simply inform every offender that he or she will receive whatever definite term is the allowable maximum and thereby retain full discretion in every case to impose that term should the violation of the conditions of community control be serious. For example, in this case, the trial court could have informed the offender at the initial sentencing hearing that if he violated the conditions of his community control, it would impose a `specific term' of 12 months' incarceration, the maximum term allowed for a fifth-degree felony under R.C. 2929.14(A)(5)." Id. at ¶ 30. The Ohio Supreme Court further stated that there was "nothing in R.C. Chapter 2929 that would explicitly forbid such a practice. However, the intent underlying R.C. 2929.19(B)(5) is obviously for the trial court to predict what the consequences should be for a possible future violation of the conditions and to assign a numbered specific term consonant with its prediction. Even though this prediction is necessarily speculative, a trial court that simply notifies every offender of the maximum term in all cases would not be conscientiously implementing the intent of R.C. Chapter 2929." Id. at ¶ 31.
 {¶ 131} R.C. 2929.14(A)(5) provides that the prison term for a felony of the fifth degree ranges from six months to twelve months. At Bell's sentencing hearing, the trial court stated that "[v]iolation of this sentence may lead to a longer or more restrictive sanction for defendant, up to and including a prison term of up to 11 months." (Emphasis added.) In accordance with Brooks, supra, we conclude that the trial court, in notifying Bell that he would face "up to 11 months" of imprisonment were he to violate his community control sanctions, erred in failing to notify Bell of a specific prison term that he awaits if he violates his community control sanctions.
 {¶ 132} Because the trial court failed to give Bell notice of a specific prison term that he could be subject to for a violation of his community control sanctions, Bell contends that his sentence should be vacated.
 {¶ 133} "When a trial court makes an error in sentencing a defendant, the usual procedure is for an appellate court to remand to the trial court for resentencing. See R.C. 2953.08(G); Comer, 99 Ohio St.3d 463,2003-Ohio-4165, 793 N.E.2d 473, at ¶ 10, 23, 27. In community control sentencing cases in which the trial court failed to comply with R.C.2929.19(B)(5), however, a straight remand can cause problems. Due to the particular nature of community control, any error in notification cannot be rectified by `renotifying' the offender. When an offender violates community control conditions and that offender was not properly notified of the specific term that would be imposed, an after-the-fact reimposition of community control would totally frustrate the purpose behind R.C. 2929.19(B)(5) notification, which is to make the offender aware before a violation of the specific prison term that he or she will face for a violation. Consequently, where no such notification was supplied, and the offender then appeals after a prison term is imposed under R.C. 2929.15(B), the matter must be remanded to the trial court for a resentencing under that provision with a prison term not an option."Brooks, 2004-Ohio-4746, at ¶ 33.
 {¶ 134} In this case, there is no indication that Bell has violated his community control sanctions and a prison term has not been imposed for such a violation. Therefore, the trial court has the opportunity to make Bell aware, before a violation of his community control sanctions occurs, of the specific prison term that he will face for such a violation. Therefore, we also remand this matter to the trial court with instructions to notify Bell of the specific prison term to which he will be subject if he violates his community control sanctions.
 {¶ 135} Bell's Fifth Assignment of Error is sustained.
 VI {¶ 136} Bell's Sixth Assignment of Error is as follows:
 {¶ 137} "The trial court erred in sentencing appellant as appellant's sentence is inconsistent with sentences imposed on other offenders for similar offenses."
 {¶ 138} Bell contends that his six-month imprisonment sentence, in addition to five years of community control sanctions, is inconsistent with sentences imposed on other offenders convicted of similar offenses. Bell requests that his sentence be modified to just five years of community control sanctions, without any sentence of incarceration, in order for his sentence to be consistent with sentences imposed on other offenders convicted of similar offenses. We first note that the sixmonth jail sentence was not in addition to the five-years of community control sanctions — the five years of community control sanctions included the six-month jail sentence.
 {¶ 139} R.C. 2929.11(B) provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 140} "R.C. 2929.11(B) imposes a duty upon the trial court to insure consistency among the sentences it imposes. * * * [It is] also recognized, however, that trial courts are limited in their ability to address the consistency mandate, and appellate courts are hampered in their review of this issue, by the lack of a reliable body of data upon which they can rely. * * * `[A]lthough a defendant cannot be expected to produce his or her own database to demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.' Having failed to raise this issue at sentencing, [the defendant] cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders." State v. Roberts, Cuyahoga App. No. 84070, 2005-Ohio-28, at ¶ 60, internal citations omitted.
 {¶ 141} We agree with the Eighth District Court of Appeals. In this case, Bell failed to raise the issue of his sentence being inconsistent with sentences imposed on other offenders convicted of similar offenses to the trial court. Because he failed to raise this issue in the trial court, Bell cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed upon similar offenders.
Bell's Sixth Assignment of Error is overruled.
 VII {¶ 142} Bell's First, Second, Third, Fourth, and Sixth Assignments of Error having been overruled and his Fifth Assignment of Error having been sustained, Bell's conviction is affirmed, but his sentence is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
Brogan, P.J., and Wolff, J., concur.