The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as *State v. Thompson*, 161 Ohio App.3d 334, 2005-Ohio-2508.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20592.

Decided May 20, 2005.

336

Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

William T. Daly, for appellant.

DONOVAN, Judge.

{¶ 1} Defendant-appellant Thomas E. Thompson appeals from his conviction and sentence for one count of aggravated burglary, one count of abduction, one count of escape, and one count of violation of a protection order.

{¶ 2} On May 30, 2003, Thompson was indicted for domestic violence, aggravated burglary, abduction, escape, and violation of a protection order. With the exception of the charge for domestic violence, which the state dismissed, Thompson entered pleas of no contest with respect to the remainder of the charges. On August 29, 2003, the trial court sentenced Thompson to a total of two years.

{¶ 3} Thompson appealed his conviction, and in *State v. Thompson* (March 19, 2004), Montgomery App. No. 20114, 2004-Ohio-1320, 2004 WL 541165, we held that Thompson's written waiver of his constitutional rights could not substitute for the requirement that the trial court orally advise him of his constitutional rights before accepting the no contest plea. The case was reversed and remanded to the trial court further proceedings.

{¶ 4} On May 25, 2004, the case proceeded to trial, and a jury ultimately found Thompson guilty of all four counts in the indictment. On June 15, 2004, the trial court sentenced Thompson to three years for aggravated burglary, one year for abduction, and six months for violation of a protection order, these sentences to run concurrently. With respect to the conviction for escape, the trial court sentenced Thompson to six months, this sentence to run consecutively to the other counts.

{¶ 5} In the instant appeal, Thompson submits three assignments of error for review by this court. In his first assignment, Thompson contends that his conviction and subsequent consecutive sentence for escape are contrary to law and should be vacated. In his second assignment, Thompson argues that he was deprived of a fair trial when the trial court committed plain error by permitting the prosecution to make profane and unprofessional comments within the hearing of the jury. Last, Thompson contends that because of the unreliability of the evidence presented by the state, his conviction was against the manifest weight of the evidence.

{¶ 6} For the following reasons we reverse in part and affirm in part the decision of the trial court and remand for further proceedings in accordance with this opinion.

## I

{¶ 7} Thompson and the complaining witness, Donna Back, were married in March 1999. Their relationship, as evidenced by the record, was tumultuous and

characterized by numerous violent episodes, one of which resulted in the issuance of a temporary protection order against Thompson on March 3, 2003. The order prohibited Thompson from having any contact with Back, even if Back consented to the meeting. Thompson was required to surrender his keys to their residence and was enjoined from entering therein with or without Back's permission.

{¶ 8} As a condition of his bond, Thompson was placed on pretrial electronic home detention. He was allowed to go to work, but when he was not working, he was confined to his parents' residence. Evidence was presented at trial that demonstrated that both Thompson and Back routinely ignored the terms of the protection order. Thompson was seen on multiple occasions leaving Back's residence, and Back testified that she had visited Thompson at his parents' residence numerous times.

{¶ 9} On the afternoon of April 22, 2003, Back met Thompson's sister and some of her friends at the Lamplighter Bar in Brookville, Ohio. After approximately one hour, Back left the bar. As she approached her vehicle, Thompson and his nephew pulled up in a van. Thompson exited the van and allegedly began screaming obscenities at Back in an attempt to show his apparent disapproval of her being in the bar.

{¶ 10} After this verbal encounter, Back traveled to her son's house. Back's son arranged to have Back's nephew meet Back at her residence. Back returned to her residence, where she fed her dog and met up with her nephew and his girlfriend. The three of them then went to the nearby Wide Open Bar, where they sat and drank for approximately four to five hours.

{¶ 11} During this time span, Thompson contacted Back on her cell phone. He allegedly told Back that he was stranded on U.S. 35, requesting that Back come to pick him up. Back testified that because of the earlier incident involving Thompson, she decided to ignore his request and remained at the bar until closing at approximately 2:30 a.m. Back left the bar and returned home with her nephew, who stayed with her that night so that she would not be alone. Back testified that she and her nephew were extremely inebriated upon leaving the bar. Back stated that she went directly to bed in her bedroom while her nephew slept in the living room.

{¶ 12} Shortly after falling asleep, Back testified, she awoke to discover Thompson standing over her with his hand over her mouth. Thompson allegedly demanded that she give him a ride to either his parents' house in Brookville or to a friend's residence in order to purchase crack. Back testified that Thompson physically threatened her and her nephew, although her nephew did not awaken during the encounter. Not wanting to get hurt, Back decided to drive Thompson to his parents' residence.

{¶ 13} Back stated that during the drive, Thompson demanded that she take him to purchase drugs. When Back refused, Thompson allegedly threw Back's cell phone out the window, removed the keys from the ignition, and exited the vehicle. After a short period of time had elapsed, Thompson returned to the vehicle, and Back continued on to Thompson's parents' residence, leaving him there.

{¶ 14} After leaving Thompson's parents' home, Back returned to the area of road where Thompson had thrown her cell phone, in an attempt to retrieve it. While she was trying to locate the phone, Patrolman Matthew Leaman of the Jackson Township Police Department observed Back's vehicle sitting on the side of the road pointed in the wrong direction.[1] As Back's vehicle left the area, Officer Leaman stopped her. Back immediately exited the vehicle and told Officer Leaman that her husband had broken into her house and forced her to drive to his parents' house. When the officer questioned her concerning why she had stopped facing the wrong direction, she explained that she was trying to locate her cell phone, which her husband had thrown out of the vehicle. Based on these allegations, New Lebanon police subsequently arrested Thompson at his parents' residence on the morning of April 23, 2003.

{¶ 15} After a jury trial on May 25 and 26, 2004, Thompson was convicted of aggravated burglary, abduction, escape, and violation of a protection order. It is from this judgment that Thompson now appeals.

## II

{¶ 16} Thompson's first assignment is as follows:

{¶ 17} "The escape conviction and resulting consecutive sentencing is clearly contrary to law."

{¶ 18} In his first assignment, Thompson contends that his conviction for escape is contrary to law because the statute does not include pretrial electronic home monitoring within its purview. Essentially, Thompson argues that pretrial electronic home monitoring imposed as a condition of bond does not provide a basis for a conviction for escape. The state maintains, however, that at the time Thompson was convicted this court had previously held that pretrial electronic home monitoring is a form of detention for the purposes of the escape statute. *State v. West* (Aug. 21, 1998), Montgomery App. No. 16888, 1998 WL 639290. Thus, the state asserts that the conviction should be affirmed on appeal.

---

1. Back testified at trial that at the time she was stopped by Officer Leaman, she was intoxicated as well as driving with a suspended license.

{¶ 19} During the pendency of Thompson's appeal, the Ohio Supreme Court issued a decision in which it unequivocally stated: "[P]retrial electronic home monitoring was not intended to be a form of detention under R.C. 2921.01(E). Thus, we hold that pretrial electronic home monitoring does not constitute detention for the purpose of prosecuting the crime of escape, nor does it satisfy the requirements of proof in R.C. 2929.04(A)(4)." *State v. Gapen* (2004), 104 Ohio St.3d 358, 371, 819 N.E.2d 1047, 2004-Ohio-6548, see, also, *State v. Holt* (May 12, 2000), Montgomery App. No. 18035, 2000 WL 569930 (holding that time spent by defendant under pretrial electronic home detention "is not assessable as credit time against imprisonment when it is a condition of bail prior to sentencing"); contra *State v. Long* (1992), 82 Ohio App.3d 168, 611 N.E.2d 504 (electronic home detention "time served as part of the sentence is recognized as a form of 'detention' for purposes of applying the escape statute"). In the instant appeal, it is undisputed that Thompson was under pretrial electronic home monitoring as a condition of his bond when he violated the protection order and was subsequently charged with escape.

{¶ 20} The state contends that the mandate set forth in *Gapen* does not apply because at the time defendant was on trial, pretrial electronic home monitoring was a form of detention for purposes of escape in the Second District. The state argues that if Thompson desired to challenge the law as it existed at that time, he should have raised the argument during trial. Because he failed to do so, Thompson cannot now challenge his conviction for appeal on that basis. The state's argument is without merit.

{¶ 21} In *Griffith v. Kentucky* (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649, the United States Supreme Court held that *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (case prohibiting the use of peremptory challenges based on race), could be applied retroactively. The court stated:

{¶ 22} "We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, *pending on direct review or not yet final,* with no exception for cases in which the new rule constitutes a 'clear break' with the past." (Emphasis added.) *Griffith,* 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d 649.

{¶ 23} The court reasoned that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication," and further that "selective application of new rules violates the principle of treating similarly situated defendants the same." Id. at 322–323, 107 S.Ct. at 713, 93 L.Ed.2d 649. In *Griffith,* the court applied *Batson* retroactively in order to expand the rights of the defendant.

{¶ 24} Retroactive application of new law, however, may raise ex post facto concerns. *State v. Crawley* (1994), 96 Ohio App.3d 149, 644 N.E.2d 724, citing *State v. Kurzawa* (1994), 180 Wis.2d 502, 509 N.W.2d 712. "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law." *Bouie v. Columbia* (1964), 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894. An ex post facto law includes any law that "deprives one charged with crime of any defense available according to law at the time when the act was committed." *Beazell v. Ohio* (1925), 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216. In *Gapen,* the Ohio Supreme Court did not seek to enlarge the escape statute; rather, the court explicitly limited R.C. 2921.34(A)(1) so that pretrial electronic home detention was not contained within its purview.

{¶ 25} In light of the above analysis, we find that the retroactive application of the Supreme Court's holding in *Gapen* is proper. Thus, Thompson's conviction for escape for violating the terms of his pretrial electronic home monitoring is contrary to law, and accordingly is set aside.

{¶ 26} Thompson's first assignment of error is sustained.

### III

{¶ 27} Thompson's second assignment is as follows:

{¶ 28} "There was plain error depriving the defendant of the right to a fair trial and professional misconduct when the prosecutor declared in open court before the defendant's jury, to defense counsel 'Your [sic] full of shit.'"

{¶ 29} In his second assignment, Thompson contends that the trial court erred when it allowed the prosecution to personally attack defense counsel within the hearing of the jury after defense counsel attempted to question Back with respect to whether she had been coerced by the prosecution into testifying against Thompson. Moreover, Thompson argues that the trial court erred when it precluded defense counsel from pursuing a line of questioning regarding the alleged coercion of Back by the prosecution.

{¶ 30} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14–15, 14 OBR 317, 470 N.E.2d 883. The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.

{¶ 31} It is clear from the videotape of the record that the prosecution immediately objected when defense counsel attempted to question Back with respect to whether she had been coerced by the prosecution to testify against Thompson. In fact, the video record shows that one of the two prosecutors

trying the case forcibly slammed his hands down on the table when they lodged their objection. On the way up to the sidebar conference with the trial judge, Thompson asserts that one of the prosecutors stated, "You're full of shit" to defense counsel. This statement, however, cannot be heard on the videotape of the proceedings, as counsel is moving away from the microphones. What is clear, however, is the same prosecutor arguing at sidebar to defense counsel that what he did say was "That question was full of shit." After this additional exchange at sidebar, both defense counsel and the two attorneys for the prosecution argued their positions on the objection. The court sustained the objection made by the state.

{¶ 32} Other than asserting that the behavior of the prosecution was extremely unprofessional, Thompson fails to point to anything in the record that demonstrates that his substantial rights were prejudicially affected by the prosecutors' statements or actions. It is clear to this court, however, that the prosecutors' reaction to defense counsel's questions concerning Back's alleged coercion by the state was belligerent and disrespectful. The use of profanity by the prosecutor when addressing defense counsel in open court was completely inappropriate and unprofessional.

{¶ 33} The prosecution is afforded wide latitude to highlight the relative strengths of its case and the relative weakness of the defense, but this latitude does not extend as far as allowing the prosecution to denigrate the role of defense counsel. *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203; *State v. Hart* (1994), 94 Ohio App.3d 665, 641 N.E.2d 755. The prosecuting attorney is warned that statements such as "You're full of shit" and "That question is full of shit" reflect poorly upon the administration of justice and the proper role of the state to seek justice and truth. While we are cognizant that tempers flare sometimes during the trial, and the prosecutor may strike hard blows, he is not at liberty to strike foul ones.

{¶ 34} As we noted in *State v. Ward* (Mar. 2, 1991), Montgomery App. No. 18211, 2001 WL 220244, "when the language used by the prosecutor implies dishonesty, particularly in such a crude manner, it results in an inflammatory attack that does not belong in a fair trial." Of equal, if not greater, concern is the following remark made by the second prosecutor during the same sidebar, "Let's have it out right now," spoken twice while pointing his finger at defense counsel and backing up in an aggressive stance.

{¶ 35} The videotape record, while failing to properly record the use of the word "shit" (later admitted), does, however, provide us with demonstrative evidence of an attempted physical intimidation of defense counsel by the second prosecutor. We condemn the type of misconduct displayed and remind both

prosecutors that they are servants of the law, subject to ethical considerations as well as disciplinary rules. Although charged with a duty to prosecute vigorously, they must remain professional and courteous to opposing counsel as well as the court.

{¶ 36} While there is no evidence that the reprehensible behavior exhibited by the state's attorneys prejudiced the outcome of the trial, their actions provide a glaring example of how not to conduct oneself in a court of law. However, a review of the entire record reveals that these isolated remarks did not deprive Thompson of a fair trial.

{¶ 37} With respect to defense counsel's inquiries regarding Back's alleged coercion by the state, it was not error for the trial court to sustain the state's objection to that line of questioning. Where counsel has objected, the plain-error analysis suggested by appellant has no application.

{¶ 38} It is well established that the admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157. During the sidebar conference discussed above, defense counsel argued that he spoke with Back before the trial began and that she told him that the prosecution threatened to incarcerate her if she did not testify against Thompson. Defense counsel sought to characterize any testimony offered by Back against Thompson as made under duress and therefore suspect.

{¶ 39} However, during a proffer made outside the presence of the jury, Back stated that it was her private attorney, not the prosecution, who had informed her that she might be incarcerated if she did not appear to testify. Back testified that as Thompson's trial date neared, she became less and less willing to testify. She stated that she spoke with an attorney in the prosecutor's office prior to trial and asked him what would happen to her if she chose not to testify after being subpoenaed by the state. He informed that if she chose not to appear at trial, she could be held in contempt of court. Back testified that she then asked her own attorney what would happen if she was held in contempt, and he told her that she could possibly go to jail. After the proffer was made, the trial court sustained the prosecution's objection and told the jury to disregard statements made by defense counsel regarding coercion of Back by the state.

{¶ 40} We hold that it was not an abuse of discretion for the trial court to bar defense counsel from questioning Back concerning alleged threats made by the state. Had the trial court allowed defense counsel to pursue that line of questioning, the jury may have been misled with respect to Back's motives for

testifying. The state did not attempt to obtain Back's testimony through duress, but rather simply explained to her the consequences of her failure to appear to testify after she had been subpoenaed. It was her own attorney who informed her that a finding of contempt could result in her being incarcerated.

{¶ 41} Thompson's second assignment of error is overruled.

IV

{¶ 42} Thompson's third and final assignment is as follows:

{¶ 43} "The conviction was against the manifest weight of the evidence."

{¶ 44} In his final assignment, Thompson contends that his convictions for aggravated burglary and abduction are against the manifest weight of the evidence. Thompson argues that the evidence was insufficient to demonstrate that he either trespassed in Back's apartment or abducted Back, for the purposes of the count of aggravated burglary.

{¶ 45} The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386, 678 N.E.2d 541. As this court stated in *State v. Lucas* (Sept. 21, 2001), Montgomery App. No. 18644, 2001 WL 1103288, the proper test to apply in determining sufficiency is the one set forth in paragraph two of the syllabus in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:

{¶ 46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 47} After a thorough review of the record, it is clear that the prosecution presented sufficient evidence with respect to Thompson's culpability in the aggravated burglary and abduction of Back. As to the charge of aggravated burglary, the state elicited testimony from Back that in the early morning hours of April 23, 2003, she awoke to find Thompson in her apartment without her permission with his hand over her mouth. By the terms of the temporary

protection order issued against him, Thompson had no right or privilege to be in the apartment or to come within 500 yards of Back.

{¶ 48} During trial, Thompson presented evidence that Back had allowed Thompson to enter the apartment on numerous occasions after the issuance of the protection order. Thompson contends that this proves that Back acquiesced in his presence in the apartment, and thus, he could not be guilty of aggravated burglary. Notwithstanding this evidence, the state sufficiently demonstrated that Thompson committed the crime for which he was charged.

{¶ 49} With respect to his conviction for the crime of abduction, the state contends that it sufficiently demonstrated that Thompson removed Back from her apartment against her will and, with threats of violence against her and her nephew, forced her to drive him to one of three destinations. Thompson argues that no abduction occurred because he and Back were in her vehicle, she "was in control" of the situation, and "she dictated to Tommy [Thompson] where he was going."

{¶ 50} The state elicited testimony from Back that she was forced to leave her apartment by Thompson against her will. The fact that once they were in the car, Back exercised some control over their destination does not alter the evidence presented that Thompson removed her from her apartment against her will.

{¶ 51} Viewed in a light most favorable to the prosecution, the evidence presented by the state clearly gave the jury sufficient facts to find Thompson guilty beyond a reasonable doubt of the crimes of aggravated burglary and abduction. Thus, Thompson's conviction for those crimes is not against the manifest weight of the evidence.

{¶ 52} Thompson's final assignment of error is overruled.

## V

{¶ 53} Based on the foregoing, Thompson's first assignment of error is sustained, and his conviction for escape is vacated. The judgment of the trial court is reversed, and this matter is remanded for resentencing in accordance with the law and consistent with this opinion. With respect to Thompson's second and third assignments, the judgment of the trial court is affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

BROGAN, P.J., and WOLFF, J., concur.