[Cite as *State v. Yount*, 2011-Ohio-3107.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

    Plaintiff-Appellee                  :           C.A. CASE NO.    24023

v.                                      :           T.C. NO.    09CR3781/1

TERESA A. YOUNT                         :             (Criminal appeal from
                                                      Common Pleas Court)
    Defendant-Appellant             :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___24th___ day of ____June____, 2011.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

SCOTT N. BLAUVELT, Atty. Reg. No.0068177, 246 High Street, Hamilton, Ohio 45011
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Teresa A. Yount was convicted after a jury trial in the Montgomery County Court of Common Pleas of felonious assault (deadly weapon) and felonious assault (serious physical harm), both second degree felonies.  The felonious assault counts were merged, and the trial court sentenced Yount to five years in prison.

**{¶ 2}** Yount appeals from her conviction and sentence, claiming prosecutorial misconduct, ineffective assistance of counsel, and that the court failed to consider statutory sentencing factors and imposed a disproportionate sentence. For the following reasons, the trial court's judgment will be affirmed.

I

**{¶ 3}** The State's evidence at trial established the following facts.

**{¶ 4}** At approximately 10:30 p.m. on November 10, 2009, Eva Collins was walking eastbound along East Third Street near her home on Springfield Street in Dayton when she noticed a 1988 Ford Bronco pass her a few times. Soon thereafter, the Bronco pulled over onto Bell Street and stopped, and two women that Collins did not know exited the vehicle;[1] one of the women carried a baseball bat. Collins described one woman as 18 to 21 years old and about 5' 3"; the woman wore glasses and had short, pink hair. Collins stated that the other woman was between 30 and 45 years old, was about 5' 6" or 5' 7", and was wearing a black coat with fur around the hood and that "had like cats or some kind of designs on it." Collins later clarified that she had seen the front of the coat, and it was black with silver designs on it.

**{¶ 5}** The two women approached Collins, and Collins said, "Hello." One of the women responded, "What did you say to me?" Collins stated that she had said hello. The woman said, "Are you sure that's what you said?" Collins replied, "Yes, ma'am, that's exactly what I said." As Collins turned to continue up Third Street, the "younger lady"

---

[1] Collins testified that one of her sisters had been married to Michael Yount, one of Yount's brothers, but Collins denied knowing Yount. Yount testified that she lived with Michael and his then-wife (Collins's sister) for three months when she (Yount) was 12 years old. Yount said she had seen Collins once.

struck Collins in the lower back with the baseball bat, knocking Collins to her knees. Collins pulled herself up, and she heard the "older lady" tell the younger woman to hand her the bat. As the older woman began to swing, Collins put up her hands to protect her face. The older woman struck Collins's hands twice with the bat.

{¶ 6} The women then ran across the street and got back into the Bronco, which had turned around while the assault was occurring. Collins testified that the older woman got into the front passenger seat of the vehicle. As the vehicle was pulling away, the older woman pointed at Collins and said, "Next time, bitch, I will kill you." Collins saw that there were three people in the front of Bronco and three to four people in the back. The driver of the vehicle was a man with a mustache who wore glasses and had short hair.

{¶ 7} Collins got out her cell phone and called 911. She also called her sister, with whom she lived, and told her what had happened. Collins's sister came and took Collins home. An ambulance and Dayton Police Officer Greg Paxton responded to the Springfield Street address. When the ambulance and police cruiser approached Collins's home, the Bronco drove past. Someone at the residence told Officer Paxton that the passing Bronco contained the suspects. Paxton made a U-turn and pursued the vehicle. The ambulance took Collins to Miami Valley Hospital.

{¶ 8} Officer Paxton stopped the Bronco at the intersection of Huffman Avenue and Third Street. Paxton noticed six people in the vehicle. Shane Parkinson, Yount's boyfriend, was the driver. Teresa Yount ("Yount") and Kirstin Smith, who was a friend of Yount's 13-year-old daughter and lived with Yount, were seated in the front passenger area

of the Bronco.[2] Madge Long, Yount's 22-year-old niece, was seated in the back with Yount's two youngest children, who were seven and eight years old. Other witnesses testified that Georganna Yount, Yount's 13-year-old daughter, was also in the back of the vehicle. Paxton knew Yount, and he described the other woman (Long) as having black hair with pink tips.

{¶ 9} Officer Paxton spoke with the three adults – Parkinson, Yount, and Long. They told the officer that they had gone to Wal-Mart and were driving around while on their way home. During the stop, Officer Sarber came to assist. Sarber observed a baseball bat in the rear of the Bronco. Yount acknowledged that the bat belonged to her; she told the officers that she was afraid of her ex-husband and she had the bat in her possession because of his violent nature. With Yount's permission, the officers took the bat into evidence. The officers told the group to go home.

{¶ 10} The following morning, Detective Rebecca Rose met with Collins at her home and took photographs of her injuries. Collins's lower back had large bruises. Collins's hands were wrapped in ace bandages; they were severely swollen and remained swollen until mid-December. Collins described her pain as "so much *** I was crying," and she was still experiencing some pain and numbness at the time of the trial.

{¶ 11} Rose showed two photo spreads to Collins. Upon seeing the photo spread with Yount, Collins began trembling and was on the "verge of hysterics." Rose took the photo spread away, gave her time to calm down, and showed her the second photo spread.

[2]Officer Paxton testified that Yount was seated in the back of the vehicle. However, Smith, Yount, Parkinson, and Georganna Yount all testified that Yount was seated in the front passenger area on the console between Parkinson and Smith.

From the second photo spread, Collins identified Long as the person with pink hair who had hit her in the back. Detective Rose then showed Collins the first photo spread again; Collins identified Yount as the woman who had hit her hands. A couple of hours later, Detective Rose showed Collins a third photo spread, which included a photo of Parkinson. Collins identified Parkinson as the driver of the Bronco. A few weeks before trial, Detective Rose showed Collins a photo array that included a photo of Smith; Collins did not recognize anyone in that array.

{¶ 12} On November 17, 2009, Detective Rose interviewed Smith in connection with the assault. Smith told Rose that she had committed the assault; Smith explained at trial that she "was scared that Teresa was going to go to jail and lose her kids." The next day, November 18, Smith went to the police station with Tonya Yount, Yount's former sister-in-law, and told Rose that Long and Yount had assaulted Collins.

{¶ 13} At trial, Smith testified that Yount and Long had beaten Collins with a baseball bat. Smith testified that they had a "game" where they "beat someone up" and "earned points." Smith stated that, earlier that day, she had hit a woman at Yount's direction and Parkinson had beaten a man as part of the game. Smith testified that she had a black coat with fur around the collar and a picture of the cat on the back, but Yount was wearing it on November 10, when the beating occurred. Smith said she was wearing Yount's jacket, which was black with white fur around the hood.

{¶ 14} According to Collins, on the Friday before trial, Yount and a man drove by her home on Springfield Street. Yount, the passenger, looked Collins "dead in the eyes" and pointed at her. Collins contacted Detective Rose, who found Yount and Parkinson in a

drive-thru parking lot near Collins's home.

{¶ 15} Yount testified on her own behalf and offered the testimony of Tonya Yount, Parkinson, and Georganna Yount. Tonya Yount testified that Smith had given inconsistent statements about her (Smith's) involvement in the assault. Although Tonya Yount's testimony was somewhat difficult to follow, Tonya Yount related that Smith had told Detective Rose that she (Smith) was the second person involved in the assault, but Rose did not believe her. Tonya Yount testified that Smith had also said that Yount was the second person involved in the assault.

{¶ 16} Georganna Yount and Parkinson both testified that Long and Smith had assaulted Collins with the baseball bat and that Yount did not get out of the Bronco. They both also testified that Smith had been wearing the black jacket with a cat on the back of it. Parkinson testified that he had told Detective Rose that Long and Smith were responsible for the assault, but he later changed his story and gave a written statement implicating Yount instead of Smith only after Rose told him that he could get out of jail if he made such a statement.

{¶ 17} During her testimony, Yount acknowledged that an assault occurred on Third Street in Dayton, that the vehicle was a Bronco and was driven by Parkinson, that Long got out of the vehicle and struck Collins with a baseball bat, and that she (Yount) was in the Bronco. Yount denied that she assaulted Collins with Long, and testified that Smith had been the second person. Yount stated that she had told Long and Smith "not to get out and do it," and that she had stayed in car with the children and watched.

{¶ 18} Parkinson and Yount also testified regarding the alleged intimidation of

Collins prior to trial. They denied knowing where Collins lived and driving past Collins's house. They stated that Yount had arranged to meet police officers at the drive-thru for assistance in picking up her children from their father's home.

{¶ 19} The jury found Yount guilty of both counts of felonious assault. The court merged the counts and sentenced Yount to five years in prison. Long, Yount's co-defendant, had previously pled guilty to felonious assault (deadly weapon) and was sentenced to five years of community control; in exchange for the plea, the State dismissed the second count of felonious assault (serious physical harm).

{¶ 20} Yount raises three assignments of error on appeal.

II

{¶ 21} Yount's first assignment of error states:

{¶ 22} "APPELLANT YOUNT WAS DENIED THE RIGHT TO DUE PROCESS AND A FAIR TRIAL, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, PURSUANT TO A PATTERN OF PREJUDICIAL PROSECUTORIAL MISCONDUCT."

{¶ 23} In her first assignment of error, Yount contends that the State engaged in prosecutorial misconduct during the cross-examination of Parkinson and during the State's closing and rebuttal argument.

{¶ 24} In reviewing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones*, 90 Ohio St.3d 403, 420, 2000-Ohio-187. "The touchstone of

analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed. See *State v. Loza* (1994), 71 Ohio St.3d 61, 78, overruled on other grounds. We review the alleged wrongful conduct in the context of the entire trial. *State v. Stevenson*, Greene App. No. 2007-CA-51, 2008-Ohio-2900, ¶42, citing *Darden v. Wainwright* (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.

{¶ 25} Beginning with the cross-examination of Parkinson by the State, Yount claims that the following exchange constituted two acts of prosecutorial misconduct.

{¶ 26} "Q: Isn't it true that you previously have been convicted of a felony?

{¶ 27} "A: In '91.

{¶ 28} "Q: You were convicted of aggravated robbery?

{¶ 29} "A: Yes, I was.

{¶ 30} "Q. So you're no stranger to crime.

{¶ 31} "MR. CASS [defense counsel]: Objection.

{¶ 32} "THE COURT: Sustained."

{¶ 33} First, Yount asserts that the prosecutor improperly impeached Yount's credibility with questions regarding his prior conviction. Yount failed to object to the prosecutor's questions regarding the existence of Parkinson's prior conviction. Accordingly, we review those questions under a plain error analysis.

{¶ 34} Under Crim.R. 53(B), "[p]lain errors or defects affecting substantial rights

may be noticed although they were not brought to the attention of the court." The Supreme Court has identified three "limitations" on the corrections of plain errors. *State v. Lynn*, Slip Opinion No. 2011-Ohio-2722, ¶13. "First, there must be an error, i.e., a deviation from a legal rule. *** Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. *** Third, the error must have affected 'substantial rights', *** mean[ing] that the trial court's error must have affected the outcome of the trial." Id., quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27. Even when all three prongs are satisfied, an appellate court has discretion to decide whether to correct the error. Id. at ¶14. Plain error should be recognized only under exceptional circumstances and to correct a manifest miscarriage of injustice. Id.

{¶ 35} "When the State seeks to attack the credibility of a testifying defendant, 'evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year *** and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid.R. 609(A)(2). The decision whether or not to admit evidence under Evid.R. 609 is left to the sound discretion of the trial court, and a reviewing court will not override that decision absent an abuse of discretion." *State v. Lawson*, Montgomery App. No. 23456, 2010-Ohio-3114, ¶17.

{¶ 36} Evid.R. 609(B) imposes time limits on the use of prior convictions, stating:

{¶ 37} "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release

control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

{¶ 38} Parkinson testified that his conviction for aggravated robbery occurred 19 years before Yount's trial. The record, however, contains no information about Parkinson's sentence, when he was released from any confinement, whether he was on parole, and when any such supervision was terminated. It is significant that Parkinson's conviction occurred prior to Senate Bill 2, effective July 1, 1996, which "changed the sentencing system in Ohio by providing precise guidance for criminal sentencing." *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, ¶120. At the time Parkinson was sentenced for aggravated robbery, a first-degree aggravated felony under pre-Senate Bill 2 law, he was subject to an indefinite prison term of up to 25 years. See former R.C. 2929.11(B)(1). It is possible that the time limits of Evid.R. 609(B) were not violated, and we have no way of knowing, from the record before us, that they were. Accordingly, we cannot conclude that the State's questions about Parkinson's prior conviction constituted plain error.

{¶ 39} Second, Yount contends that the prosecutor "denigrated" Parkinson by making the comment, "So you're no stranger to crime." Yount objected to the prosecutor's statement, and the objection was sustained. At oral argument, the State acknowledged that the comment was wrong, but argued that it was not prejudicial. We certainly agree that the prosecutor's statement was improper, but we also agree with the State that it was not prejudicial. Yount's objection to the comment had been sustained, and the jury had heard,

without objection, that Parkinson had a 1991 conviction for aggravated robbery. Given Parkinson's past felony conviction, the jury was aware that Parkinson was, in fact, "no stranger to crime."

{¶ 40} Yount further complains about various statements by the prosecutor during her closing argument and rebuttal argument. Yount did not object during the State's closing and rebuttal arguments, and we review the prosecutor's statements for plain error.

{¶ 41} "The purpose of closing argument is to summarize the evidence at trial." *John F. Bushelman Const., Inc. v. Glacid Group, Inc.* (June 26, 1996), Hamilton App. Nos. C-950412, C-950438. Prosecutors and defense counsel are afforded a wide degree of latitude during closing arguments to address what the evidence has shown and what reasonable inferences may be drawn from that evidence. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, ¶33, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 165.

{¶ 42} Yount asserts that the prosecutor improperly vouched for Smith's credibility when she made the following statements during closing argument:

{¶ 43} "So what does the evidence tell us? You heard the testimony of Kirstin Smith and she told you she was in the Bronco on the night that this happened. And she told you that the defendant was there. And she told you about this twisted game that this group of people engage in where they beat people up, random attacks, for points. Kirstin didn't lie about that. She was open; she was honest with you on the stand about what they were doing. ***"

{¶ 44} An attorney may not express a personal belief or opinion as to the credibility of a witness. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶117, citing *State v.*

*Williams* (1997), 79 Ohio St.3d 1, 12. "In order to vouch for the witness, the prosecutor must imply knowledge of facts outside the record or place the prosecutor's personal credibility in issue." Id., citing *State v. Keene* (1998), 81 Ohio St.3d 646, 666.

**{¶ 45}** Standing alone, the prosecutor's statements that Smith was "open" and "honest" during her testimony could be construed as vouching. However, the prosecutor continued to discuss that Smith did not deny her involvement in the "game" and that she had no motivation to lie about the assault on Collins when she did not deny that she had assaulted two other women for points in the "game." Viewing the prosecutor's argument as a whole, the prosecutor was arguing that Smith had admitted to her participation in the "game," that her testimony regarding the game placed her in a negative light, and thus Smith's testimony regarding that participation was believable. The prosecutor's statements did not rise to the level of prosecutorial misconduct.

**{¶ 46}** Yount further contends that the prosecutor made an unwarranted attack on defense counsel when she stated in her rebuttal argument that "the defense is trying to steer you away from the evidence in this case." Yount asserts that her counsel's closing argument had pointed out inconsistencies and deficiencies in the prosecution's case.

**{¶ 47}** We find this case to be analogous to *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, in which we held that the prosecutor's statement to the jury that "all the defense is only trying to do with that argument is to distract you from the facts" did not constitute prosecutorial misconduct. We noted in *Black* that the prosecution's wide latitude to argue the relative strengths of its case and the relative weakness of the defense "does not extend as far as allowing the prosecution to denigrate the role of defense counsel." Id. at

¶35, quoting *State v. Thompson,* 161 Ohio App.3d 334, 2005-Ohio-2508, ¶ 33. We concluded after a thorough review of the record, however, that the State "was not trying to denigrate defense counsel when it made the offending statement. During a criminal trial, both the state and the defense present their theories of the case based on the evidence adduced. Here, each party exercised their right to interpret the evidence in a manner favorable to their positions." Id.

{¶ 48} The same is true here. Both the prosecutor and the defense counsel concentrated their arguments on the evidence, noting the evidence that was most favorable to their positions. After reviewing the record in its entirety, the prosecutor's statement that Yount's counsel was trying to steer the jury away from the evidence did not constitute prosecutorial misconduct.

{¶ 49} Yount further argues that the prosecutor engaged in misconduct by attacking each defense witness with the refrain that they had a "motivation to come in and lie for" Yount. Specifically, the prosecutor stated that Tonya Yount had a motivation to lie for Yount because they are related and they lived together, that Georganna Yount had a motivation to lie for Yount because she did not want to see her mother "get in trouble," and that Parkinson had a motivation to lie for Yount because they were engaged to be married. Each of these proffered motivations was supported by the evidence. The prosecutor's argument was not improper.

{¶ 50} Finally, Yount claims that the prosecutor engaged in misconduct by arguing that Yount "had time to talk to her family members, to tell them who she's going to blame and who they need to blame, because they're all scared of her so they're going to do what

she says." Yount argues that the prosecutor's statement was unsupported by the evidence, and she emphasizes that the trial court had previously prohibited the State from calling Detective Rose as a rebuttal witness to testify that Parkinson was fearful of Yount.

{¶ 51} During the State's redirect examination of Smith, the prosecutor asked Smith about her prior assaults on women, as follows:

{¶ 52} "Q: Okay. [Defense counsel] asked you about some other incidents in which you were involved.

{¶ 53} "A: Yes.

{¶ 54} "Q: Were these done at Teresa's direction?

{¶ 55} "A: Excuse me?

{¶ 56} "Q: Did Teresa – was she involved in that? Did she tell you to do that?

{¶ 57} "A: Yes.

{¶ 58} "Q: Okay. How many of the times did she tell you to do it?

{¶ 59} "A: Both times.

{¶ 60} "Q: Both times Teresa told you to do it?

{¶ 61} "A: Yes.

{¶ 62} "Q: Did she tell you why?

{¶ 63} "A: No.

{¶ 64} "Q: Okay. Why did you do what Teresa told you to do?

{¶ 65} "A: Because I lived with her and I'm – I'm kind of scared of her."

{¶ 66} The prosecutor did not elicit testimony from Tonya Yount, Georganna Yount, or Parkinson that they were also scared of Yount. The State conceded at oral argument that

there was insufficient evidence to support an argument that all of Yount's witnesses were scared of her and, thus, felt compelled to lie at trial. While counsel is afforded great latitude to argue what the evidence shows, counsel's arguments must be grounded in the evidence at trial.

{¶ 67} Nevertheless, upon considering the entirety of the trial, the prosecutor's statement that Yount's witnesses were afraid of her (Yount) and would do what she said, was not prejudicial. Smith had testified that she had assaulted two women at Yount's direction because she was afraid of Yount and, thus, the jury had heard some testimony consistent with the prosecutor's argument. Further, the prosecutor had emphasized that each of Yount's witnesses had a familial relationship to her (ex-sister-in-law, daughter, fiancé) and, thus, had a motivation to lie on her behalf. In our view, it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even absent the prosecutor's statement.

{¶ 68} At oral argument, Yount's counsel asserted that the cumulative effect of the prosecutor's misconduct denied her a fair trial. Although the Supreme Court of Ohio has stated that numerous harmless errors may cumulatively deprive a defendant of a fair trial and thus may warrant the reversal of his conviction, *State v. DeMarco* (1987), 31 Ohio St.3d 191, paragraph two of the syllabus, upon a complete review of the record, we cannot conclude that prejudicial error exists in this case.

{¶ 69} Yount's first assignment of error is overruled.

III

{¶ 70} Yount's second assignment of error states:

{¶ 71} "APPELLANT WAS PREJUDICED BY THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶ 72} In her second assignment of error, Yount claims that her trial counsel rendered ineffective assistance by failing to object to the prosecution's impeachment of Parkinson with his prior felony conviction, by failing to request a limiting instruction related to that conviction, and by failing to object to the instances of prosecutorial misconduct.

{¶ 73} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook* (1992), 65 Ohio St.3d 516, 524.

{¶ 74} As discussed above, we have found no instances of prosecutorial misconduct that prejudiced Yount's substantial rights. Accordingly, defense counsel did not render ineffective assistance when he failed to object to those alleged instances.

{¶ 75} Nor do we find that defense counsel rendered ineffective assistance by failing to object to the State's cross-examination of Parkinson with his prior felony conviction or to

request a limiting instruction regarding that conviction. It is unclear from the record whether the prosecutor's questions were improper, and even assuming that the use of Parkinson's prior felony conviction violated Evid.R. 609(B), the record does not support the conclusion that this information affected the outcome of Yount's trial.

{¶ 76} The strongest witness against Yount was Collins, who provided detailed testimony about the nature of the assault and her attackers. Although Collins believed that the bat was wooden rather than metal and that the Bronco was blue and white rather than green and tan, Collins correctly identified the weapon as a baseball bat and her assailants' vehicle as an "old-style" Bronco. Yount admitted that Collins's identifications of Long, the "younger lady" with the pink hair, and of Parkinson, as the Bronco's driver, were accurate. Collins had also testified that three people were in the front of the Bronco and that three or four people were in the back seat, a fact that was confirmed by Yount, Parkinson, Smith, and Georganna Yount. Collins testified that the Bronco turned around on Bell Street during the assault; Parkinson testified similarly. Collins described the second assailant as an "older lady" between 30 and 45 years old and she identified Yount from a photo spread. Collins's description of the jacket worn by "the older woman," however, raised questions as to whether she had seen the jacket owned by Smith or by Yount, both of which were black with faux fur around the hood.

{¶ 77} Smith's statements to the police were inconsistent, but her testimony at trial supported Collins's testimony that Yount, and not Smith, had participated in the assault; Smith further stated that Yount was wearing her (Smith's) jacket when the assault occurred.

{¶ 78} In contrast, Parkinson, Yount, and Georganna Yount testified that Smith

exited the Bronco with Long and assaulted Collins and that Smith was wearing her own jacket. Parkinson acknowledged that he had stopped the car to let the women out, turned the vehicle around during the assault, and drove away after the women got back in. The evidence of Parkinson's past criminal conduct may have affected his credibility, but considering his apparent involvement in the assault as the getaway driver and that he was Yount's fiance, we do not find that the evidence of his past conviction was so significant that it affected the outcome of the trial.

{¶ 79} The second assignment of error is overruled.

IV

{¶ 80} Yount's third assignment of error states:

{¶ 81} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO PROPERLY CONSIDER THE STATUTORY SENTENCING FACTORS AND GUIDELINES CONTAINED WITHIN R.C. 2929.11 AND 2929.12 WHEN IMPOSING SENTENCE AND WHEN THE TRIAL COURT IMPOSED A SENTENCE INCONSISTENT WITH THAT OF APPELLANT'S CODEFENDANT, IN VIOLATION OF R.C. 2929.11(B)."

{¶ 82} In her third assignment of error, Yount claims that her five-year prison sentence is inconsistent with the sentence imposed by the same trial judge on Long, her co-defendant, who was allegedly the initial aggressor. She asserts that the factors in R.C. 2929.11 and R.C. 2929.12 "provide little, if any, differentiation between the codefendants to justify the significant difference in sentencing."

{¶ 83} Pursuant to *State v. Foster*, 109 Ohio St. 1, 2006-Ohio-856, a trial court is no

longer required to make findings or give reasons for the sentences that it imposes; the court is vested with the full discretion to impose whatever prison term it chooses within the statutory range. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶37. Nevertheless, a trial court must still consider the statutory factors. Id. at ¶38; *State v. Jones*, Montgomery App. No. 23926, 2011-Ohio-1984, ¶41.

{¶ 84} Under R.C. 2929.11(A), "[t]he overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.12(A) provides that a court that imposes a sentence for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C. 2929.12(B) and (C) enumerate factors to be considered in weighing the seriousness of the conduct, and R.C. 2929.12(D) and (E) enumerate factors to be considered in weighing the likelihood of the offender's recidivism. The court also may consider any other factors that are relevant to achieving the purposes and principles of sentencing. *State v. Saunders*, Greene App. No. 2009 CA 82, 2011-Ohio-391, ¶11.

{¶ 85} R.C. 2929.11(B) requires that "[a] sentence imposed for a felony *** shall be consistent with sentences imposed for similar crimes committed by similar offenders." "R.C. 2929.11(B) imposes a duty upon the trial court to ensure consistency among the sentences that it imposes. *** [It is] also recognized, however, that trial courts are limited in their ability to address this consistency mandate, and appellate courts are hampered in their review of this issue by the lack of a reliable body of data upon which they can rely. *** '[A]lthough a defendant cannot be expected to produce his or her own database to

demonstrate the alleged inconsistency, the issue must at least be raised in the trial court and some evidence, however minimal, must be presented to the trial court to provide a starting point for analysis and to preserve the issue for appeal.'   Having failed to raise this issue at sentencing, [the defendant] cannot now argue that the sentence imposed by the trial court was inconsistent with those imposed on similar offenders." *State v. Bell*, Greene App. No.2004-CA-5, 2005-Ohio-655, ¶140, quoting *State v. Roberts*, Cuyahoga App. No. 84070, 2005-Ohio-28, ¶60, internal citations omitted.

{¶ 86} Long was sentenced on March 24, 2010, prior to Yount's trial.   Yount did not, however, raise the issue of inconsistent sentences in the trial court at her sentencing hearing.   Nevertheless, we find no error in the court's order of disparate sentences.

{¶ 87} Long pled guilty to the felonious assault and she expressed her remorse to the court.   Long stated during her allocution: "I just wanted to say sorry, that I'm very sorry and I take full responsibility for what I did.   And it should have never have happened."   In sentencing Long to community control, the trial court expressed that Long's situation had "caused [the court] considerable concern."   The court acknowledged that Long was 22 years old and had no previous contact with the criminal justice system, either as a juvenile or as an adult for either a misdemeanor or felony offense.   The court also noted that Long had "some significant medical as well as mental issues" in her life.   The court explained its sentence, stating:

{¶ 88} "But what persuaded me to sentence you to community control is my review of the pre-sentence report.   And I'm just going to read part of that report, the recommendation section for a moment.

**{¶ 89}** "'This offense represents Madge Long's first involvement of any sort with the criminal justice system. However, the offense was of a violent nature and was committed while Ms. Long possessed a deadly weapon, the baseball bat. Despite this, it is felt that Madge Long was a less than willing participant in the instant offense and as a result of her mental health complications, was coerced by her co-defendants into participating in this assault.'

**{¶ 90}** "And that is consistent with what I've been made aware of concerning this incident. That you do have some fairly significant mental health issues, and this activity that you – that was being engaged in, just goes beyond the realm of anything that I can imagine. Just unbelievable that folks would do something like this. But in the overall scheme of things, it's apparent to me that you were there, and you did this, but there was some coercion, some threats to you, that you lead you to do this. And I think one of the things you have to take from this is, you cannot associate with individuals like that."

**{¶ 91}** The trial court did not explain the sentence that it imposed on Yount, although it indicated that it reviewed the pre-sentence investigation report and defense counsel's sentencing memorandum. The court did not mention the principles and purposes of sentencing or the seriousness and recidivism factors. However, when the record is silent, we generally presume that the trial court complied with its duty to consider the factors set forth in R.C. 2929.11 and R.C. 2929.12. *State v. Rice*, Clark App. No. 2010 CA 7, 2011-Ohio-130, ¶12; *State v. Bailey*, Montgomery App. No. 19849, 2004-Ohio-400, ¶6 (addressing R.C. 2929.12). "To rebut the presumption, a defendant must either affirmatively show that the court failed to do so, or that the sentence the court imposed is

'strikingly inconsistent' with the statutory factors as they apply to his case." *State v. Rutherford*, Champaign App. No. 08 CA 11, 2009-Ohio-2071, ¶34.

**{¶ 92}** It is true that Yount and Long were similar in many respects. Both women had mental health issues. Yount reported that she was diagnosed with anxiety, ADHD, and bipolar mood disorder. Long also had severe mental health issues, including "severe Bipolar," anxiety/panic disorder, and depression, and she had a lengthy history of suicidal ideation and attempts. Yount had no prior felony record, and the pre-sentence investigation report revealed only non-violent misdemeanors convictions. Long had no prior contact with the criminal justice system.

**{¶ 93}** Although both women participated in the assault on Collins and Long struck the first blow, the trial court was nevertheless justified in distinguishing the culpability of Long and Yount and in imposing a substantial (although less than the maximum) prison sentence for Yount's conduct. As is apparent from Long's sentencing hearing, the court viewed the random assault on Collins as egregious conduct "beyond the realm of anything that [the court] can imagine." The trial court believed that Yount had been the instigator of the attack, a view that was supported by Smith's testimony at trial that she (Smith) had previously assaulted two women at Yount's direction. Long had also told the pre-sentence investigators that Yount and Parkinson had threatened that Long would "get the crap beat out of [her] by both of them with the baseball bat" if she (Long) did not attack Collins with the baseball bat. Yount did not accept responsibility for her actions, and she made no statements expressing remorse. When the trial court asked Yount if she wished to say anything before sentencing, Yount responded, "No." Yount was 37 years old when the

offense occurred, compared with Long's youth. The fact that Yount received five years out of a possible maximum sentence of eight years further indicates that the trial court accounted for Yount's individual circumstances. We cannot say that the trial court abused its discretion when it sentenced Yount to a five-year term in prison.

**{¶ 94}** The third assignment of error is overruled.

IV.

**{¶ 95}** The trial court's judgment will be affirmed.. . . . . . . . . .

GRADY, P.J. and DONOVAN, J., concur.

Copies mailed to:

Andrew T. French
Scott N. Blauvelt
Hon. Michael L. Tucker